RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2001 FED App. 0240P (6th Cir.)
File Name: 01a0240p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

DONALD RUFF; DAN GLENN,
    *Plaintiffs,*

FLETCHER CARR; GARY
HERRON; DONALD TAYLOR,
  *Plaintiffs-Appellants,*

    *v.*

MARVIN RUNYON, Former
Postmaster General of the
U.S. Postal Service; TIM
MARSHALL; DANIEL KUACK;
MICHAEL SITTER; JOHN
WACSAK,
   *Defendants-Appellees.*

No. 99-4074

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 97-02224—James S. Gwin, District Judge.

Submitted: January 24, 2001

Decided and Filed: July 25, 2001

1

Before:  BOGGS and MOORE, Circuit Judges; COHN,
Senior District Judge.[*]

─────────────

**COUNSEL**

**ON BRIEF:**  Paul V. Wolf, DUBYAK & GOLDENSE, Cleveland, Ohio, for Appellants.   Lynne H. Buck, ASSISTANT UNITED STATES ATTORNEY, Cleveland, Ohio, for Appellees.

─────────────

**OPINION**

─────────────

I.

COHN, Senior District Judge.   Plaintiffs-appellants Fletcher Carr, Donald Taylor, and Gary Herron are African-American and former employees of the United States Postal Service.[1]   They claim that defendants-appellees, in conducting an investigation regarding possible drug activities by its employees, improperly and illegally targeted African-American postal employees and excluded white postal employees from the investigation.[2]   Plaintiffs made constitutional tort claims under *Bivens*,[2] claiming violations of the First, Fourth, Fifth, Sixth, and Ninth Amendments, as well as claims under the Federal Tort Claims Act (FTCA), 28 U.S.C. § 2671.  The matter was assigned to a magistrate judge

─────────────

[*] The Honorable Avern Cohn, Senior United States District Judge for the Eastern District of Michigan, sitting by designation.

[1] Former plaintiffs Dan Glenn and Donald Ruff settled their claims with defendants.

[2] *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Investigation*, 403 U.S. 388 (1971).

is REVERSED and this case is REMANDED for further proceedings consistent with this opinion.[7]

─────────────

[7] Although defendants argue alternative grounds for dismissing plaintiffs' *Bivens* claims, we decline to address their arguments, and instead leave them to be considered by the magistrate judge, or the district court, on remand.

statute does not begin to run until the charges are dismissed.[6]

### 4.

Finally, we note that other circuits, also applying *Heck*, have reached similar results. *See Harvey v. Waldron*, 210 F.3d 1008 (9th Cir. 2000) (stating that *Heck* applies to both actual and potential convictions in the context of accrual of cause of action); *Covington v. City of New York*, 171 F.3d 117 (2d Cir. 1999) (ruling that § 1983 claim would not accrue for purposes of statute of limitations until the criminal charge was actually dismissed); *Beck v. City of Muskogee Police Dept.*, 195 F.3d 553 (10th Cir. 1999) (same); *Uboh v. Reno*, 141 F.3d 1000 (11th Cir.1998) (holding that *Bivens* claim accrued after the dismissal of the criminal claims);*Smith v. Holtz*, 87 F.3d 108 (3rd Cir. 1996) (stating that a § 1983 cause of action accrues for statute of limitation purposes when the conviction is dismissed outright, not when it is reversed and remanded for a new trial); *Abdella v. Rubino*, 63 F.3d 1063, 1065 (11th Cir. 1995) (holding that "the *Heck* rule applies to *Bivens* actions;" therefore, plaintiff's *Bivens* claim was not ripe as plaintiff's conviction had not been declared invalid.). *But c.f. Clay v. Allen*, 242 F.3d 679 (2001) (holding that reversal of conviction on direct appeal was sufficient to permit plaintiff to file § 1983 action).

### IV.

*Shamaeizadeh* is dispositive of the instant appeal. Plaintiffs' *Bivens* claims did not accrue until the prosecutor dismissed the charges against them, in April of 1996. Because plaintiffs filed their claims on August 28, 1997, well within two years, the claims are not barred by the statute of limitations. Accordingly, the decision of the magistrate judge

---

[6]Notably, the magistrate judge found that plaintiffs' malicious prosecution claims under the FTCA do not accrue "until the charges were dismissed." (JA at p. 209)

under 28 U.S.C. § 636(c), before whom the defendants filed motions to dismiss. The magistrate judge, *inter alia*, dismissed plaintiffs' *Bivens* claims on the grounds that they were barred by the statute of limitations. For the reasons that follow, the decision of the magistrate judge is REVERSED.

### II.

### A.

Plaintiffs are former employees of the United States Postal Service in Cleveland, Ohio. In 1991, defendants Tim Marshall ("Marshall"), Daniel Kuack ("Kuack"), Michael Sitter ("Sitter"), and John Wacsak ("Wacsak"), inspectors and employees of the United States Postal Service, directed an investigation of alleged drug use and drug trafficking by and among postal employees in Cleveland, Ohio. Specifically, Marshall and Kuack, under the supervision of Sitter and Wacsak, hired confidential informants to engage in an undercover operation in which the informants would make controlled purchases of illegal drugs from postal employees. However, instead of arranging drug purchases, the informants fabricated evidence of drug purchases which never occurred. As a result of the information provided by the informants during the drug investigation, plaintiffs were indicted by a grand jury of Cuyahoga County, Ohio on multiple drug charges. Plaintiffs, although believing themselves innocent, pleaded guilty to lesser charges and fewer counts. All of the plaintiffs lost their jobs as a result of the drug investigation.

In April of 1994, an article appeared in the Cleveland Plain Dealer reporting that "the key informant" in the drug investigation admitted to wrongly implicating plaintiffs in drug purchases that never occurred. On April 4, 1995, plaintiffs filed motions to withdraw their guilty pleas and/or for a new trial after apparently learning, based on the article, that the indictments were based on false information which was presented to the grand jury. The state court granted the motions and ordered new trials. On March 26, 1996, the county prosecutor elected not to further prosecute plaintiffs and dismissed all charges against them.

B.

On August 28, 1997, plaintiffs filed this action against defendants Marshall, Kuack, Sitter, and Wacsak, in their official and individual capacities, and Marvin Runyon, as Postmaster General of the United States Postal Service. Plaintiffs made constitutional tort claims under *Bivens* against Marshall, Kuack, Sitter, Wacsak, and the United States Postal Service, as well as federal tort claims for malicious prosecution, abuse of process, negligent infliction of emotional distress, and intentional infliction of emotional distress against all defendants.

The defendants filed motions to dismiss, arguing in part that plaintiffs' *Bivens* claims were barred by Ohio's two-year statute of limitations and specifically arguing that plaintiffs' claims accrued in 1991, when plaintiffs were indicted, or at the latest, on April 4, 1995, when they filed motions to withdraw their guilty pleas. Plaintiffs argued that their claims did not accrue until the prosecutor dismissed the charges against them, in March of 1996. The magistrate judge found that plaintiffs' claims accrued in April of 1995, when they filed their motions to withdraw their guilty pleas in state court, as that was when plaintiffs knew that the indictments were based on false information. Because plaintiffs did not file suit within two years, the magistrate judge dismissed plaintiffs' *Bivens* claims against Marshall, Kuack, Sitter and Wacsak as time barred.[3]

---

[3] At the time plaintiffs' *Bivens* claims were dismissed, the magistrate judge dismissed plaintiffs' negligent infliction of emotional distress claim against all defendants, and dismissed plaintiffs' malicious prosecution, abuse of process, and intentional infliction of emotional distress claims against the United States Postal Service and Marvin Runyon, as Postmaster. The case was then set for trial on plaintiffs' claims under the FTCA for malicious prosecution, abuse of process, and intentional infliction of emotional distress against the United States, who was substituted as a defendant at that time. *See* Memorandum and Order filed August 3, 1998, JA at p. 200. Plaintiffs do not appeal these decisions. Subsequently, the district court granted summary judgment in favor of the United States on plaintiffs' remaining claims, which plaintiffs also do not

Defendants say that because plaintiffs had long since served their sentences,[5] under both *Spencer* and *Shamaeizadeh*, the statute of limitations cannot have accrued when the charges against plaintiffs were dismissed. This argument, however, fails to recognize that even if plaintiffs had served their sentences at the time that they learned that the informant had recanted his testimony, or at the time they moved to withdraw their guilty pleas, the fact remains that the statute of limitations does not begin to run until plaintiffs "knew or should have known of their injury." Thus, plaintiffs' situation was not analogous to Spencer's, because Spencer became aware of his injury - the alleged violation of his due process rights at a parole revocation hearing - prior to his release from custody. Plaintiffs' injury here, for purposes of *Bivens*, was that plaintiffs pleaded guilty based on the informant's testimony and that defendants' alleged actions resulted from their wrongful conviction. Plaintiffs' injury - being wrongfully convicted - was therefore not known until the charges against them were dismissed. As such, plaintiffs' *Bivens* claims are analogous to a claim of malicious prosecution, and like a malicious prosecution claim, the

---

[5] The record reveals the following regarding plaintiffs' sentences: On February 11, 1992, Fletcher Carr pled guilty to attempted sale of marijuana. Carr received a suspended sentence of 6 months incarceration. He was then sentenced to 6 months probation, ordered to perform community service, and pay fines and costs. *See* Defendants' Ex. N to Motion to Dismiss and for Summary Judgment - plea transcript. On November 14, 1991, Gary Herron pled guilty to attempted sale a marijuana and also received a suspended sentence of 6 months incarceration, and sentenced to 6 months probation, with community service, and ordered to pay fines and costs. *See* Defendants' Ex. O to Motion to Dismiss and for Summary Judgment - plea transcript. On December 12, 1991, Donald Taylor pled guilty to the sale of heroin, less than bulk amount, and was sentenced to 18 months incarceration. *See* Defendants' Exhibit P to Motion to Dismiss and for Summary Judgment - plea transcript. Taylor apparently served three months, and was then placed on shock probation. *See* Defendants' Exhibit F to Motion to Dismiss and for Summary Judgment - deposition of Taylor at p. 118-19.

of a state actor under § 1983 and federal actor under *Bivens*); *Williams v. Hill*, 74 F.3d 1339, 1340 (D.C. Cir. 1996) (noting that bodies of law relating to § 1983 and *Bivens* actions have been assimilated in most respects); *Abella v. Rubino*, 63 F.3d 1063, 1065 (11th Cir. 1995) (stating that the same rationales apply to § 1983 and *Bivens* actions, including *Heck*); *Tavarez v. Reno*, 54 F.3d 109, 110 (2d Cir. 1995) (stating that the similarity between § 1983 and *Bivens* actions extends to *Heck* analysis); *Stephenson v. Reno*, 28 F.3d 26, 27 (5th Cir. 1994) (finding no distinction between state and federal prisoners in analysis of *Bivens* and § 1983 actions). Thus, we find that *Shamaeizadeh's* holding regarding the accrual of the statute of limitations, premised on *Heck*, applies with equal force to *Bivens* claims.

### 3.

Nor do we find that *Spencer v. Kemna*, 523 U.S. 1 (1998) compels a different result. In *Spencer*, Justice Souter, concurring and joined by Justices O'Connor, Ginsburg, and Breyer, indicated that the favorable termination requirement in *Heck* no longer applies after a plaintiff/prisoner is released from custody. *See Spencer* 523 U.S. at 21. Although the concurring opinion did not explicitly so state, Spencer had knowledge of the injury he sought to redress under § 1983 when he was released from custody. Therefore, he was able to bring his § 1983 claim immediately upon termination of his sentences. Justice Stevens, although dissenting from the majority opinion, agreed with Justice Souter on this point, thereby providing a majority of the Supreme Court. *See id*. at 25 n.8. In *Shamaeizadeh*, we acknowledged this holding in *Spencer*, stating, in dicta, that "[a]pparently, in such a situation [where the defendant is no longer in custody but has knowledge of his injury], the statute of limitations would begin to run when the plaintiff has satisfied his term of imprisonment." *Shamaeizadeh*, 182 F.3d at 396 n.3.

### III.

### A.

A district court's dismissal under FED. R. CIV. P. 12(b)(6) is reviewed *de novo*. *See Decker v. Merrill Lynch, Pierce, Fenner and Smith, Inc.*, 205 F.3d 906, 909 (6th Cir. 2000); *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995).

### B.

It is undisputed that plaintiffs' claims are governed by Ohio's two-year statute of limitations. *See* OHIO REV. CODE ANN. § 2305.10 (West 2001). The question of when the statute of limitations beings to run, however, is determined by federal law. *See Wilson v. Garcia*, 471 U.S. 261, 268-71 (1985). Under federal law the statute begins to run when plaintiffs knew or should have known of the injury which forms the basis of their claims. *Friedman v. Estate of Presser*, 929 F.2d 1151, 1159 (6th Cir. 1991) (citing *Sevier v. Turner*, 742 F.2d 262, 273 (6th Cir. 1984)); *Keating v. Carey*, 706 F.3d 377, 382 (2d Cir. 1983). "This inquiry focuses on the harm incurred, rather than the plaintiff's knowledge of the underlying facts which gave rise to the harm." *Id*. (citing *Shannon v. Recording Indus. Ass'n of Amer.*, 661 F. Supp. 205, 210 (S.D. Ohio 1987)). "A plaintiff has reason to know of his injury when he should have discovered it through the exercise of reasonable diligence." *Sevier*, 742 F.2d at 273 (citing *Briley v. California*, 564 F.2d 849, 855 (9th Cir. 1977)).

### C.

### 1.

Plaintiffs argue that the statute did not begin to run until March 26, 1996, when the prosecutor dismissed the charges

---

appeal. *See* Opinion and Order filed August 3, 1999, JA at p. 600.

against them.  Plaintiffs in particular rely on our decision in *Shamaeizadeh v. Cunigan*, 182 F.3d 391 (6th Cir.), *cert. denied*, 120 S. Ct. 531 (1999) decided after the magistrate judge's decision here.

The plaintiff in *Shamaeizadeh* sued the police officers and police department under 42 U.S.C. § 1983 regarding an alleged illegal search of his house and a subsequent criminal proceeding.  As a result of the search, Shamaeizadeh and others were charged with various drug and weapons crimes.  Shamaeizadeh moved to suppress the evidence on the grounds that the search was illegal; the district court granted the motion.  A panel of this court affirmed the district court and the government dismissed all charges against Shamaeizadeh on April 8, 1996.  Shamaeizadeh subsequently filed his § 1983 action on April 8, 1997.[4]  The district court found that the statute of limitations began to run on the date of the search, not the date the charges were dismissed.

We reversed the district court's decision, and held that the statute of limitations did not begin to run until the criminal charges were dismissed.  The rationale for our holding was premised upon the Supreme Court's decision in *Heck v. Humphrey*, 512 U.S. 477 (1994).  In *Heck*, the Supreme Court held that § 1983 actions, like civil tort actions, are not "appropriate vehicles for challenging the validity of outstanding criminal judgments . . . that necessarily require the plaintiff to prove the unlawfulness of his conviction or confinement."  *Id*. at 486.  Thus, in order to protect against a collateral attack on pending or outstanding state convictions or sentences, the Supreme Court concluded that

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by action whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed

---

[4]Under Kentucky law, applicable in *Shamaeizadeh*, there is a one-year statute of limitations on § 1983 actions.

on direct appeal, expunged by executive order, declared invalid by a state tribunal . . . or called into question by a federal court's issuance of a writ of habeas corpus.

*Id*.  Until such time, a cause of action under § 1983 for damages is not cognizable.  *See id*.

Although we recognized in *Shamaeizadeh* that the statute of limitations was not an issue in *Heck*, we nevertheless concluded that the "underlying theory" of *Heck* - a concern for whether allowing a cause of action to proceed would impugn the validity of a future or outstanding criminal conviction - "provide[ed] the foundation for the proper resolution of when the statute of limitation accrued." *Shamaeizadeh*, 182 F.3d at 396.  As such, we held that a cause of action under § 1983 will not accrue "until the disposition of any pending criminal charges."  *Id*. at 399.  Having the statute of limitations commence at this point guards against the concern in *Heck* regarding the effect of a § 1983 action on the validity of a pending or outstanding criminal prosecution by ensuring that a § 1983 action will not accrue until the criminal prosecution reaches final disposition.

Applying *Shamaeizadeh*, plaintiffs' claims did not accrue until the charges against plaintiffs were finally dismissed because prior to that point in time, plaintiffs did not "know" of their injury for purposes of the statute of limitations.

2.

Defendants, however, argue that because this case involves a *Bivens* action, not a § 1983 action, *Shamaeizadeh* does not apply.  This argument is not persuasive.  *See Robinson v. Jones*, 142 F.3d 905, 907 (6th Cir. 1998) (stating that the "*Heck* holding applies equally to an action brought under *Bivens*" so that a federal prisoner could not bring a *Bivens* action until demonstrating that his conviction has been "declared invalid or otherwise impugned as set forth in *Heck*.")  Other circuits have reached similar results.  *See Martin v. Sias*, 88 F.3d 774, 775 (9th Cir. 1996) (stating that § 1983 and *Bivens* actions identical except for the requirement