**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 10a0782n.06

No. 09-6241

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| ADRIANNE HEBRON, ADRIAN RIVERS-MCKISSIE, ANGELA HARRIS, BYRON CATRON, DAVID DODSON, DELINDA MITCHELL, EMERALD GORDON, VELMA JONES, JANICE M. JOHNSON, JESIE EDDINGS, JONATHAN Q. IRVIN, MARQUERITE RHYMES, PAMELA FORD, PATRICIA COMMODORE, RONALD BOYD, SHAWN MAKLIN, SYREETA STANLEY, TERESA WILSON, AND THELMA SANDER, | ) ) ) ) ) ) ) ) ) ) ) ) ) |  |
| Plaintiffs-Appellants, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE |
| v. | ) ) | WESTERN DISTRICT OF TENNESSEE |
| SHELBY COUNTY GOVERNMENT, | ) ) |  |
| Defendant-Appellee. | ) |  |

Before:  MOORE, SUTTON and McKEAGUE, Circuit Judges.

SUTTON, Circuit Judge.  The plaintiffs, several Shelby County deputy correctional officers, sued the county when it promoted other deputies to the rank of sergeant.  The district court dismissed the complaint on the ground (along with one other) that it was time-barred.  Because the plaintiffs' case comes to us on a motion to dismiss under Civil Rule 12(b)(6) and because plausible theories of relief remain, we reverse.

I.

In June 2003, Shelby County eliminated 33 sergeant positions at its Criminal Justice Center due to budgetary constraints. Shelby County officials gave the sergeants a choice: (1) discharge or (2) temporary demotion to deputy until additional sergeant positions became available. The plaintiffs accepted the demotions. Several months later, the county reinstated five previously demoted sergeants to their original rank and the plaintiffs waited for additional positions to become available.

The plaintiffs continued to wait for three years when, in October 2006, the county announced a promotions process for several sergeant positions. The promotions posting ran from October 31, 2006, through November 13, 2006. Yet the county did not offer to reinstate any of the demoted deputies to their previous rank. The demoted deputies asked about being reinstated, and the county told them they had to participate in the new round of testing to determine who would obtain the promotions. On August 1, 2008, the county promoted eleven deputies to the rank of sergeant. None of the demoted deputies received a promotion.

On October 22, 2008, the demoted deputies filed this lawsuit against the county and a county sheriff in state court. The deputies alleged that the defendants had violated § 12-44 of the Shelby County Code, which provides that "[a]ny employee laid off or temporarily demoted . . . under this section shall be given *priority* over other applicants to reinstatement." Shelby Cnty. Code § 12-44 (emphasis added); R.3-1 at 3–4. The deputies also invoked 42 U.S.C. § 1983, claiming that the

defendants had deprived them of their property—continued employment and rank—without due process of law, because the defendants had not complied with the applicable county ordinance governing demotions. R.3-1 at 5. In their complaint the deputies appeared to present two different due process theories: in some places claiming they were "entitled to priority over other applicants to reinstatement," *id.* ¶ 23, in other places claiming they were entitled to "immediate[] reinstate[ment]," *id.* at 6 ¶ 4.

The defendants removed the case to federal court, and the deputies voluntarily dismissed the Shelby County sheriff from the suit, leaving the county as the sole defendant. The county filed a motion to dismiss on two grounds: (1) the statute of limitations barred the plaintiffs' suit, and (2) § 12-44 of the Shelby County Code did not contain a private right of action. R.10. The district court agreed with both arguments and dismissed the suit. The deputies appealed the statute-of-limitations ruling.

II.

A few principles guide our resolution of the statute-of-limitations question. Tennessee's one-year statute of limitations applies to the plaintiffs' § 1983 claims. *Montgomery v. Carter Cnty.*, 226 F.3d 758, 772 (6th Cir. 2000); *see* Tenn. Code Ann. § 28-3-104(a). Federal law determines when the statute of limitations begins to run. *Sharpe v. Cureton*, 319 F.3d 259, 266 (6th Cir. 2003). Under federal law, the limitations clock begins to run when the claimants know or should have known that the defendant violated their rights, *Ruff v. Runyon*, 258 F.3d 498, 500 (6th Cir. 2001), which occurs

when the claimants learn of an illegal action, not when the claimants feel the effects of the action, *see Del. State Coll. v. Ricks*, 449 U.S. 250, 258 (1980); *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 557–58 (1977).

Of equal import, this appeal arises from the county's motion to dismiss under Civil Rule 12(b)(6). While recent decisions of the Supreme Court establish that, to survive a motion to dismiss, plaintiffs must state "plausible" grounds for relief, the decisions do not alter the basic rule that plaintiffs must plead only the basic elements of a claim, not develop all of the facts necessary to support the claim. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556–57, 562 (2007). Nor do *Iqbal* and *Twombly* displace the general rule that we construe all reasonable inferences, including those related to a plaintiff's legal theory, in favor of the claimants. *See Beaudry v. TeleCheck Servs., Inc.*, 579 F.3d 702, 704 (6th Cir. 2009).

At this early stage in the litigation, it is possible to read the complaint as raising two distinct legal theories. The first is an "automatic reinstatement" theory—that the deputies had a right to be "immediately reinstate[d]" to their former positions as sergeants once new positions opened. *See* R.3-1 at 6. The second is a "priority" theory—that the plaintiffs had a right to a "priority over other applicants to reinstatement," Shelby Cnty. Code § 12-44; R.3-1 ¶ 23, which could mean nothing more than adding a few points to the scores of participating deputies in the promotions process.

*The automatic reinstatement theory.* In assessing whether this theory cleared the one-year statute of limitations, the district court applied the correct legal framework, one that undermined

many of the plaintiffs' arguments. Gauged by the principle that the statute-of-limitations clock begins to run when the claimants know or should have known that the defendant violated their rights, *Ruff*, 258 F.3d at 500, the district court correctly held that the one-year limitations period would begin to run when the claimants learned or should have learned that the county announced it would use new procedures to fill the sergeant openings rather than reinstating the demoted deputies. It is that action, not the eventual promotion, that should have first alerted the deputies of the need to protect their alleged property interest: reinstatement. *See Ricks*, 449 U.S. at 258.

Calling the promotions a "continuing violation" does not help the deputies. The deputies may have felt additional financial effects from the county's actions in August 2008, when the county promoted others to the sergeant positions, but the Supreme Court has long held that the ongoing effects of an allegedly illegal action do not amount to continuing violations. *See Ricks*, 449 U.S. at 258; *Evans*, 431 U.S. at 557–58. All that the county did in 2008 was follow through on its announcement by taking the next logical step, filling the positions based on the procedures it announced it would use. The 2008 promotions amount to the effects of any initial violation—the county's repudiation of any right to reinstatement and adoption of impermissible new procedures in its place— not a continuing violation that starts the limitations clock anew. *See Ricks*, 449 U.S. at 258; *Anderson v. City of Bristol*, 6 F.3d 1168, 1175 (6th Cir. 1993); *Cox v. City of Memphis*, 230 F.3d 199, 202, 204–05 (6th Cir. 2000).

The deputies also claim they could not have filed a lawsuit earlier than they did because they had not yet suffered any injury. But the deputies had accepted demotions, a loss of pay and seniority,

on the condition that the county would automatically reinstate them when new sergeant positions became available. To the extent the county announced procedures other than automatic reinstatement for filling sergeant positions within a year of October 22, 2008, the deputies had the right to seek injunctive relief to prevent the county from implementing the new policy and to require the county to comply with the county ordinance by immediately filling the positions with the demoted deputies.

All of this shows that the district court correctly stated the applicable law. Our one question relates to timing. Paragraph 16 of the complaint leaves unclear the timing of the county's announcement that the deputies would have to participate in the promotions process along with everyone else in order to obtain a sergeant position. The paragraph notes only that "[w]hen the Plaintiffs inquired, the Department said it would not reinstate them to the rank of sergeant," R.3-1 ¶ 16, but there is no further specification about the "when." Any concession the deputies made below relates only to the announcement the county posted in November 2006. Nowhere did the deputies specify or agree on a date when the county informed them they would have to participate in the competitive promotions process.

Given the Rule 12(b)(6) stage of this case, plaintiffs deserve limited discovery on at least two points: (1) when and how the county informed the deputies they would have to participate in the promotions process and the nature of the notice and (2) the timing of the promotions posting. If this discovery confirms the district court's conclusions about the evidence, its legal conclusions are also correct. Otherwise, plaintiffs are entitled to move to the next stage of the case.

*The priority theory.* Also embedded in the deputies' complaint, as noted, is a second theory: the "priority" theory. The district court did not discuss this theory. And with ample reason: the deputies did not actively pursue it. In response to the county's motion to dismiss, the deputies focused their complaints on the county's failure to reinstate them immediately when positions became open, R.15 at 7 (twice), 8 (twice), 9, and mentioned priority just four times, R.15 at 4, 5, 10 (twice).

While the deputies did not feature the "priority" theory before the district court or this court, the theory appears in the complaint, and it is not an implausible conception of liability. Paragraph 23 of the complaint quotes the statute and claims the deputies "are entitled to 'priority over other applicants to reinstatement.'" R.3-1 ¶ 23. It is also quite possible that this theory of recovery is not time-barred. The plaintiffs may not have known, and may not have had any reason to know, that the county would deprive them of "priority" until the county announced the results of the promotions process. Up to this point, the deputies would not necessarily have known of the denial of a promotion, and they would not necessarily have known that they did not receive a "priority" bump in the promotions process (or for that matter that they received a priority bump, though not one sufficient to obtain a promotion). Under these circumstances, it is appropriate to give the claimants a shot at the theory—more specifically a shot before the district court of determining whether this theory survives Rule 12(b)(6), perhaps after limited discovery on the relevant points.

III.

For these reasons, we reverse and remand for further proceedings.