*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 13a0175p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

JESSIE HARRISON,

        *Plaintiff-Appellant*,

    *v.*

STATE OF MICHIGAN, et al.,

        *Defendants-Appellee*s.

No. 10-2185

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 1:10-cv-570—Janet T. Neff, District Judge.

Decided and Filed:  July 10, 2013

Before:  DAUGHTREY and ROGERS, Circuit Judges; ZOUHARY, District Judge.[*]

_____

**COUNSEL**

**ON BRIEF:** Jessie Harrison, Ionia, Michigan, pro se.

    DAUGHTREY, J., delivered the opinion of the court, in which ZOUHARY, D. J., joined.  ROGERS, J. (pp. 14–16), delivered a separate dissenting opinion.

_____

**OPINION**

_____

    MARTHA CRAIG DAUGHTREY, Circuit Judge.  Plaintiff Jessie Harrison filed this civil rights action *pro se,* seeking  damages and injunctive relief stemming from his unlawful confinement in the Michigan prison system.  In 1986, Harrison was sentenced to consecutive terms of imprisonment following a jury conviction for two crimes that, under state law, were subject to concurrent sentencing only.  Harrison was released from

---

    [*]The Honorable Jack Zouhary, United States District Judge for the Northern District of Ohio, sitting by designation.

prison in 1990, some 18 months after serving the statutory maximum for the offenses of conviction. On collateral review, the Michigan Court of Appeals held that Harrison had been improperly sentenced and ordered that a corrected judgment be issued. *People v. Harrison*, No. 279123, 2008 WL 4276544 (Mich. Ct. App. Sept. 16, 2008). In 2010, Harrison filed the instant action against the State of Michigan and a number of state defendants, seeking damages and a reduction in a subsequent, unrelated prison sentence that he was still serving at the time this action was filed. The district court dismissed the complaint, holding that some of the defendants were immune from suit under the Eleventh Amendment; that the claims against the remaining defendants were time-barred; and that the claim concerning the failure to commute his 1991 sentence was non-cognizable. *Harrison v. Michigan*, No. 10-cv-570, 2010 WL 2925992 (W.D. Mich. July 21, 2010). Although we find no error in the district court's rulings on the question of sovereign immunity and on the commutation issue, we conclude that Harrison's claim for damages under 42 U.S.C. § 1983 is not time-barred. We therefore reverse the district court's judgment and remand the case for further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

In 1986, Harrison was charged with second-degree murder and carrying a firearm during the commission of a felony ("felony-firearm"). Following a jury trial, Harrison was convicted of reckless use of a firearm resulting in death – a lesser-included misdemeanor – and felony-firearm. Harrison received consecutive sentences. He notified prison officials that his sentence was too long, but the warden and the parole board ignored his protestations. As a result, he was not released until March 1990. Following his release, Harrison subsequently committed another, unrelated firearm offense in 1991, was found guilty, and returned to prison.

Apparently, incarceration provided Harrison with time to research Michigan law and, in 2003, Harrison filed a motion in state court for relief from the 1986 judgment under Michigan Court Rule 6.502. Harrison asserted that his 1986 sentence was improper because the felony-firearm sentence could not run consecutively to a sentence for a misdemeanor. This error, Harrison argued, resulted in his serving 18 months of

illegal imprisonment. The state trial court denied relief but that decision was reversed on appeal. In spite of the fact that he was no longer in prison on the conviction that led to the sentence under challenge and had not raised the issue on direct appeal, the Michigan Court of Appeals ruled that the sentence he received was "invalid" and, as such, constituted "actual prejudice." With the state's concurrence, the court also excused Harrison's delay in filing the motion for relief from judgment, finding that the delay was caused by ineffective assistance of counsel on the part of his trial and appellate counsel, who had failed to challenge his sentence at trial or on direct appeal. As a result, the Michigan Court of Appeals reversed the 1986 sentence and ordered the lower court to issue a new judgment. *Harrison*, 2008 WL 4276544, at *2. The state trial court promptly did so.

Armed with his favorable decision from the state appellate court and the corrected judgment, Harrison petitioned the Michigan Department of Corrections (MDOC) to give him 18 months' credit on the 1991 sentence that he was still serving, but he was told that there was no authority to do so, because the new decision related to his 1986 conviction only. Undeterred, Harrison filed an application for a commutation of the last two years of his 1991 sentence with the Michigan Parole Board and, later, with the Governor, but met with no success.

Harrison then filed this action in 2010, under 42 U.S.C. § 1983. In his complaint, he alleged that the State of Michigan, the Michigan Parole Board, MDOC, Governor Jennifer Granholm, Wayne County, and a number of MDOC officials violated his constitutional rights by failing to commute his 1991 sentence and sought money damages for the 18 months he served beyond the statutory maximum provided for his 1986 convictions. The district court dismissed the claims against the State, MDOC, and the Parole Board on the basis of sovereign immunity. *Harrison*, 2010 WL 2925992, at *2. With regard to the claims against the individual defendants, the district court held that they were time-barred, after applying a three-year statute of limitations triggered by Harrison's release from prison in 1990 and citing as support *Wallace v. Kato*, 548 U.S. 384, 389 (2007). *Id.* at *3-4. The district court then dismissed the complaint *sua sponte*

for failure to state a claim. It did so without waiting for a response from the state, citing 42 U.S.C. § 1997e(c)(1). That statute allows a district court, on its own motion, to dismiss an action filed by a prisoner "if the court is satisfied that the action is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such suit." The district court also relied on 28 U.S.C. § 1915(a)(3) in certifying that an appeal could not be taken "in good faith."

Harrison has, nevertheless, appealed the district court's order of dismissal, asserting, *inter alia*, that the statute of limitations did not begin running in 1990 when he was released from custody on the sentence in question but, instead, in 2010 when he received a favorable decision from the state court that corrected his 1986 sentence. We granted Harrison the right to proceed *in forma pauperis* and now review the district court's decision in the absence of an appearance by the defendants, who declined to file a brief in this matter.

## ANALYSIS

### Standard of Review

In dismissing the complaint for failure to state a claim, the district court was required to accept all well-pleaded facts as true, *J.P. Morgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007), and apparently did so. That leaves us with questions of law, which we review *de novo*. *McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997), *overruled on other grounds in LaFountain v. Harry*, ___F.3d ___, ___ (6th Cir. 2013).

### Sovereign Immunity

The district court correctly held that the State, MDOC, and the state parole board were immune from suit under the Eleventh Amendment. "There can be no doubt . . . that suit against [a] State and its Board of Corrections is barred by the Eleventh Amendment, unless [the State] has consented to the filing of such a suit," *Alabama v. Pugh*, 438 U.S. 781, 782 (1978), or unless Congress has expressly abrogated Eleventh Amendment immunity. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99 (1984).

It is well established that § 1983 does not abrogate the Eleventh Amendment, *see Quern v. Jordan*, 440 U.S. 332, 341 (1979), and that Michigan has not consented to the filing of civil rights suits against it in federal court. *See Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). We have consistently held that neither MDOC nor the parole board is a "person" that may be sued for money damages under § 1983. *See, e.g.*, *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013) (finding MDOC immune from suit on Eleventh Amendment grounds); *Carson v. Mich. Parole Bd.*, 852 F.2d 1287 (6th Cir. 1988) (table) (finding the Michigan Parole Board immune from suit under § 1983 on Eleventh Amendment grounds). For these reasons, the district court properly dismissed those defendants from the case.

**Commutation of the 1991 Sentence**

Harrison has provided no legal basis under Michigan state law for his request to shorten his 1991 sentence to somehow rectify the error made with regard to his 1986 sentence, and we know of none. We therefore hold that the district court did not err in dismissing this claim.

**Timeliness of the Complaint**

With regard to the statute of limitations, however, the district court was mistaken when it concluded that the controlling authority on the question of timeliness in Harrison's case was *Wallace v. Kato*, which involved a § 1983 claim for false arrest, rather than for an invalid conviction or sentence. 549 U.S. at 389. The latter situation, which forms the cause of action here, is instead controlled by the Supreme Court's opinion in *Heck v. Humphrey*, 512 U.S. 477 (1994). In that case, plaintiff Heck, a state prisoner serving time for voluntary manslaughter, filed a § 1983 action in federal court seeking damages for various constitutional violations that he alleged had occurred during his prosecution. *Id.* at 479. The district court dismissed Heck's § 1983 suit "because the issues it raised 'directly implicate the legality of [petitioner's] confinement,'" *id.* at 479 (alteration in original), and the Seventh Circuit affirmed. *See Heck v. Humphrey*, 997 F.2d 355 (7th Cir. 1993).

The Supreme Court also affirmed the decision.  It held that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or *sentence* invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, *declared invalid by a state tribunal authorized to make such determination*, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254."  *Heck*, 512 U.S. at 486-87 (emphasis added).  As a result, the *Heck* court said, "A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983."  *Id.* at 487.  On the other hand, "if the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit."  *Id.* (italics omitted).

In this case, Harrison's 1986 sentence has, in fact, been "declared invalid by a state tribunal authorized to make such determination."  That favorable termination occurred when the Michigan Court of Appeals reversed Harrison's sentence in 2008, holding that "[he] was improperly sentenced to consecutive terms for his convictions," and remanded the case for entry of a corrected judgment.  *People v. Harrison*, 2008 WL 4276544, at *1.  Harrison then filed the instant § 1983 suit in 2010, within Michigan's three-year statute of limitations.  As a result, this federal action is not untimely.

Contrary to the district court's conclusion, *Wallace v. Kato* does not control this case because here, it is not a false arrest that is challenged but an invalid sentence.  In *Wallace*, the Supreme Court held that a § 1983 cause of action for *false arrest* accrues at the time of the arrest, because a "petitioner could have filed suit as soon as the allegedly wrongful arrest occurred, subjecting him to the harm of involuntary detention."  *Wallace*, 549 U.S. at 388.  Hence, the Court ruled, "the statute of limitations would normally commence to run from that date."  *Id.*  By contrast, *Heck* established a delayed accrual date in cases involving challenges to an *invalid conviction or sentence*:

>   We do not engraft an exhaustion requirement upon § 1983, but rather deny the existence of a cause of action. Even a prisoner who has fully exhausted available state remedies has no cause of action under § 1983 unless and until the conviction or sentence is reversed, expunged, invalidated, or impugned by the grant of a writ of habeas corpus. That makes it unnecessary for us to address the statute-of-limitations issue wrestled with by the Court of Appeals, which concluded that a federal doctrine of equitable tolling would apply to the § 1983 cause of action while state challenges to the conviction or sentence were being exhausted . . . . Under our analysis the statute of limitations poses no difficulty while the state challenges are being pursued, since the § 1983 claim has not yet arisen. Just as a cause of action for malicious prosecution does not accrue until the criminal proceedings have terminated in the plaintiff's favor, so also *a § 1983 cause of action for damages attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated.*

*Heck*, 512 U.S. at 489-90 (citations and internal quotation marks omitted) (emphasis added).

The other case relied upon by the district court was *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996), which the court cited as authority for the proposition that Harrison's complaint was untimely because Harrison "knew of the injuries done to him at the time they occurred," as evidenced by his effort to have MDOC correct his 1986 sentence while it was being served. *Harrison*, 2010 WL 2925992, at *4. But *Collyer* is plainly distinguishable. There the plaintiff was a state employee who brought a § 1983 action for wrongful discharge from employment, based on a due process claim involving lack of both pre-deprivation and post-deprivation processes. The *Collyer* court recognized that although state law determines what statute of limitations applies in a § 1983 case, federal law determines when the statutory period begins to run, *Collyer*, 98 F.3d at 220, and applied the standard rule in this circuit, holding that "the statute of limitations period begins to run when the plaintiff knows or has reason to know that the act providing the basis of his or her injury has occurred." *Id.* (citing *Friedman v. Estate of Presser*, 929 F.2d 1151, 1159 (6th Cir.1991)). Combining the accrual ruling in *Collyer* with the holding in *Wallace*, the district court observed that Harrison knew of his "false imprisonment" while incarcerated on the 1986 conviction and, therefore, that

the statute of limitations in his case began to run in 1990, when he was released from imprisonment.

But that analysis by the district court mixes apples with oranges and cannot be correct, because we know from *Heck* that a damages claim for a wrongful criminal conviction or sentence does not accrue until the conviction "has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck*, 512 U.S. at 487. Thus, if Harrison had brought a § 1983 suit in 1990 when released from prison on the 1986 conviction, it would *necessarily* have been dismissed for failure to state a claim, because Harrison's 1986 conviction had not yet been reversed or his sentence corrected. That did not happen until the Michigan Court of Appeals ordered the state trial court to take such action in 2008. Before that date, any claim that Harrison might have alleged asserting the invalidity of his 1986 conviction, regardless of the relief sought, would have been – in the words of the *Heck* Court – "not cognizable under § 1983" for lack of a favorable termination. *Id.*

In this case, however, the dissenting opinion posits that *Heck*'s favorable-termination requirement is not applicable, based on what the dissent describes as a "holding" set out by Justice Souter in his concurring opinion in *Spencer v. Kemna*, 523 U.S. 1 (1998). That case involved a habeas petition, brought by a prisoner who claimed that his parole status had been wrongfully revoked, violating due process. The Supreme Court held 8-1 that because Spencer was no longer in custody by the time the district court addressed the merits of his action, and because parole revocation carried no collateral consequences serious enough to support a post-release federal habeas challenge, Spencer's habeas claim was moot. Justice Souter "join[ed] the Court's opinion as well as the judgment," but he took issue with the implication that Spencer would be barred from bringing a § 1983 action against state officials for wrongful confinement if, as a matter of law, he could no longer impugn the basis for that confinement through a federal habeas action. 523 U.S. at 18 (Souter, J., concurring). Justice Souter was joined in his comments by three of his colleagues on the Court. In

addition, Justice Stevens, dissenting because he believed Spencer's habeas claim was not moot, dropped a footnote in his dissent, endorsing Justice Souter's approach – the fifth member of the court to do so. *Id.* at 25 n.8 (Stevens, J., dissenting).

In the wake of *Spencer*, a circuit split has developed concerning the significance of Justice Souter's concurring opinion, with several circuits convinced that it must be considered *dictum* because it was unnecessary to the holding of the case (*i.e.*, that Spencer's habeas claim was moot),[1] and other circuits, including our own, equally convinced that because a majority of the Court endorsed it, the concurring opinion created an exception to *Heck*'s favorable-termination requirement. *See Powers*, 501 F.3d at 601. Hence, even though, in the 15 years since *Spencer*, the Supreme Court has never recognized such an exception, we are bound by *Powers* and, therefore, must treat Justice Souter's "holding" as law. Nevertheless, *Powers* has no bearing on this case because, as Justice Souter made clear in his concurrence in *Spencer*, the exception applies only to those § 1983 litigants who are unable as a matter of law to satisfy *Heck*'s favorable-termination requirement or, at least, those unable as a matter of law to satisfy it by means of a federal habeas action. *See* 523 U.S. 1, 21 (Souter, J., concurring).[2] Certainly, that is how this court interpreted Justice Souter's concurrence in *Powers*. 501 F.3d at 601 ("It seems unlikely that Justice Souter intended to carve out a broad *Heck* exception for

_____

[1] We recently noted in *United States v. Stevenson*, 676 F.3d 557, 562 (6th Cir. 2012), that *dictum* consists of language that is not necessary to the holding, a traditional definition. It seems clear that Justice Souter's ruminations in his concurring opinion in *Spencer* were *dicta*. Because Justice Souter joined both the Court's opinion that Spencer's habeas claim was moot and the judgment affirming the district court's decision to that effect, the question he raised about whether Spencer could *nevertheless* maintain a § 1983 action for damages was not only unnecessary to the holding of the case but could also be described as purely hypothetical. At this point, however, we are bound by *Powers v. Hamilton County Public Defender Commission*, 501 F.3d 592, 602-03 (6th Cir. 2007), in which the panel chose to treat the Souter concurrence as establishing a rule of law, rather than *dictum*. As noted in the text, however, *Powers* sharply limits the applicability of Justice Souter's "holding" to cases involving prisoners who could not, as a matter of law, seek habeas relief. *Spencer* thus has no bearing on this case.

[2] In his concurrence in *Spencer*, Justice Souter appears to assume that the federal habeas statute provides the only means of satisfying the *Heck* favorable-termination requirement. He posits, for example, that "any application of the favorable-termination requirement to § 1983 suits brought by plaintiffs not in custody would produce a patent anomaly: a given claim for relief from unconstitutional injury would be placed beyond the scope of § 1983 if brought by a convict free of custody, . . . when exactly the same claim could be redressed if brought by a former prisoner who had succeeded in cutting his custody short through habeas." *Spencer*, 523 U.S. at 21 (Souter, J., concurring). But Justice Souter's formulation fails to take into consideration the fact that plaintiffs who seek damages for wrongful conviction or sentencing under § 1983 are, by definition, *state* prisoners – or ex-prisoners – suing *state* officials and, as a result, can also secure favorable terminations in the *state* courts under *state* law, either by direct appeal or by post-conviction litigation. *See Heck*, 512 U.S. at 487. That is, of course, precisely what occurred in this case.

all former prisoners.  The better reading of [Souter's] analysis [in *Spencer*] is that a § 1983 plaintiff is entitled to a *Heck* exception if the plaintiff was precluded 'as a matter of law' from seeking habeas redress, but not entitled to such an exception if the plaintiff could have sought and obtained habeas relief while still in prison but failed to do so.") Because the plaintiff in *Powers* was imprisoned "for at least one, but not more than thirty days," we concluded that he was precluded, as a matter of law, from seeking habeas redress and, therefore, was entitled to take advantage of the exception in *Spencer* to *Heck*'s favorable-termination requirement.  In this case, however, Harrison was not prevented from seeking habeas relief in prison by the brevity of his sentence.  Nor was he prevented by law from satisfying the favorable-termination requirement by other means – as is evident by the fact that he succeeded in securing a favorable termination before he brought this § 1983 suit.  As a result, both *Spencer* and *Powers* are irrelevant to Harrison's claim.

It should also be noted that in all of the cases recognizing and applying the so-called *Heck* exception (including *Spencer* itself), the purpose was to allow the plaintiff access to federal or state court to make his or her § 1983 case.  *See, e.g.*, *Spencer*, 523 U.S. at 21 ("[A] former prisoner, no longer 'in custody,' may bring a § 1983 action establishing the unconstitutionality of a conviction or confinement without being bound to satisfy a favorable-termination requirement that it would be *impossible as a matter of law* for him to satisfy.") (Souter, J. concurring); *Powers*, 501 F.3d at 603 ("[T]he favorable-termination requirement [sh]ould not be deployed to foreclose federal review of asserted deprivations of federal right by habeas-ineligible plaintiffs."); *Leather v. Ten Eyck*, 180 F.3d 420, 424 (2nd Cir. 1999) (holding that plaintiff's § 1983 action could proceed despite non-compliance with the favorable-termination requirement); *Nonnette v. Small*, 316 F.3d 872, 875-77 (9th Cir. 2002) (same); *Harden v. Pataki*, 320 F.3d 1289, 1298-99 (11th Cir. 2003) (same); *Wilson v. Johnson*, 535 F.3d 262, 267-68 (4th Cir. 2008) (same).  It thus appears that the dissenting opinion in this case has turned the so-called *Heck* exception on its head by using Justice Souter's concurrence to *deny* Harrison access to the court to pursue his § 1983 claim, rather than clearing the way for him to do so, as all the circuits invoking a *Heck* exception have done.

The dissent also contends that our opinion in *Ruff v. Runyon*, 258 F.3d 498 (6th Cir. 2001), requires us to affirm the district court. To the contrary, however, we are convinced that *Ruff* actually buttresses our analysis in this case, as well as the result. Ruff and several of his fellow postal employees were convicted on the basis of incriminating evidence fabricated by undercover informants, who had been hired as part of an investigation by the United States Postal Service (USPS) to make controlled purchases of illegal drugs from postal employees in Cleveland. Five USPS employees were indicted in 1991 and, although convinced of their innocence, they pleaded guilty to greatly reduced charges in state court and lost their jobs with the USPS as the result of their convictions. In April 1995, one of the rogue informants admitted to having framed the USPS employees, who then filed motions in state court to withdraw their guilty pleas, based on proof that the indictments were procured by false information presented to the grand jury. The state court granted the motions and ordered a new trial, but the county prosecutor dismissed the charges with prejudice in March 1996.

In August 1997, Ruff and his co-plaintiffs filed a *suit* against the Postmaster General and other USPS officials in a *Bivens* action, the federal equivalent of a § 1983 action. *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). The defendants responded with motions to dismiss the action as untimely under the Ohio two-year statute of limitations. They argued that because the plaintiffs had long since served their sentences and been released, under *Spencer* their claim accrued in 1991, when they were indicted or, at the latest, in April 1995, when they moved to withdraw their guilty pleas. Applying the standard rule in tort actions that the statute of limitations does not begin to run until plaintiffs "knew or should have known of their injury," we nevertheless invoked *Heck* and held that "Plaintiffs' injury – being wrongfully convicted – was . . . not known until the charges against them were dismissed." *Id.* at 503. Because the action was filed within two years of that dismissal, we remanded the case to the district court to permit the *Ruff* plaintiffs to proceed under *Bivens*.

In this case, the dissent cites *Ruff* for the proposition that "where a defendant is no longer in custody and has knowledge of his injury, 'the statute of limitations would begin to run when the plaintiff has satisfied his term of imprisonment.'" Rogers, J., dissenting at ___ (quoting *Ruff*, 258 F.3d at 502). What the dissent fails to acknowledge, however, is the *Ruff* court's conclusion that even though the USPS employees knew as a matter of fact that one of the informants had recanted his testimony against them at least by April 1995, they did not "have knowledge of their injury," as a matter of law, until the prosecutor dropped all charges against them on March 26, 1996, when they were no longer in custody. *Id.* at 503. It was only then that they achieved what *Heck* refers to as a favorable termination. Applying the same logic to Harrison's sentence means that, even though he apparently learned that he was being held unlawfully while still in prison, Harrison did not "have knowledge of his injury," as a matter of law, until September 16, 2008, when the Michigan Court of Appeals established that he had suffered such an injury, thereby triggering the statute of limitations applicable to Harrison's § 1983 damages claim.

Finally, the dissent fears that our holding opens the door for future § 1983 plaintiffs to "game the system" by choosing to wait until their release from custody to launch an attack on their convictions rather than seeking judicial review while in prison, thereby avoiding the procedural hurdles of federal habeas review. However, our concern in *Powers* – preventing a collateral attack on a conviction *via a § 1983 claim* when the plaintiff could have sought habeas review while in custody – does not apply here. True, Harrison did not seek habeas review. Instead, he successfully utilized the Michigan post-conviction process to set aside his wrongful sentence before filing this § 1983 action. No exception to the favorable-termination requirement needs to be invoked here because Harrison actually achieved a favorable termination through post-conviction relief. In short, Harrison is not gaming the system because he is not invoking § 1983 to attack his invalid sentence – that invalid sentence has already been set aside.

**CONCLUSION**

Applying either the *Ruff* formulation of the accrual standard or the Supreme Court's mandate in *Heck*, the proper result here is plain: the statute of limitations applicable to Harrison's § 1983 complaint was not triggered until the Michigan Court of Appeals issued its ruling in 2008. As a result, that complaint was timely when filed in 2010, and Harrison is entitled to pursue his claim on the merits. We therefore REVERSE the district court's judgment and REMAND the case for further proceedings. It appears to us that resolution of the remaining issues would be facilitated by the appearance of lawyers for both parties in this litigation.

———————————————

**DISSENT**

———————————————

ROGERS, Circuit Judge, dissenting. The district court reached the correct result in dismissing all of Harrison's claims. The statute of limitations bars Harrison's claims against the non-state defendants to the extent he seeks relief based on the excess time served for the 1986 conviction. The statute of limitations for filing a civil rights claim in Michigan is three years. *See* Mich. Comp. Laws § 600.5805(10); *Carroll v. Wilkerson*, 782 F.2d 44 (6th Cir. 1986) (per curiam). Harrison's claims arising from his 1986 sentence accrued upon his release from prison in 1990. The instant suit, filed in 2010, is therefore untimely.

Harrison argues that his claim did not accrue until the Michigan Court of Appeals held, in 2008, that Harrison had been improperly sentenced, but he is incorrect. A plaintiff's § 1983 claim does not accrue until "the plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief." *Wallace v. Kato*, 549 U.S. 384, 388 (2007) (internal quotation marks and citations omitted). *Heck v. Humphrey*, 512 U.S. 477 (1994), created a favorable-discharge rule, under which a claim relating to "a conviction or sentence that has *not* been . . . invalidated is not cognizable under § 1983." *Id.* at 487. *Heck* established that a plaintiff seeking redress under § 1983 "must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order . . . or called into question by a federal court's issuance of a writ of habeas corpus." *Id.* at 486-87. *Heck* did not "engraft an exhaustion requirement upon § 1983, but rather den[ied] the existence of a cause of action" until the plaintiff secures favorable discharge. *Id.* at 489. Were *Heck* the end of the inquiry, Harrison's § 1983 claim would not have accrued until he received the favorable discharge from the Michigan Court of Appeals in 2008, and the instant claims therefore would have been timely.

The *Heck* rule is complicated, however, by the Supreme Court's decision in *Spencer v. Kemna*, and the holding reflected in Justice Souter's concurrence. 523 U.S.

1, 18–21 (1998) (Souter, J., concurring). Justice Souter indicated that the favorable-termination requirement does not apply after a plaintiff/prisoner is released from custody. *Id.* In those situations, Justice Souter reasoned, any habeas petition brought by a plaintiff would be dismissed as moot. To bar § 1983 actions pending favorable discharge, therefore, would immunize potentially unconstitutional behavior from federal judicial review. *Id.* at 21. Justices O'Connor, Ginsburg and Breyer joined this concurrence. Justice Stevens expressed approval for the position in a dissent, thereby providing a majority of the Supreme Court. *See id.* at 25 n.8 (Stevens, J., dissenting).

There is a circuit split regarding the interplay of *Spencer* and *Heck*, but we have already determined that Justice Souter's concurrence in *Spencer* is the law.[1] *See Powers v. Hamilton Cnty. Pub. Defender Comm'n*, 501 F.3d 592, 602-03 (6th Cir. 2007). In *Shamaeizadeh v. Cunigan*, we acknowledged that *Spencer* "clearly excludes from *Heck's* favorable termination requirement former prisoners no longer in custody." 182 F.3d 391, 396 n.3 (6th Cir.1999). We have further recognized that where a defendant is no longer in custody and has knowledge of his injury, "the statute of limitations would begin to run when the plaintiff has satisfied his term of imprisonment." *Ruff v. Runyon*, 258 F.3d 498, 502 (6th Cir. 2001) (internal quotation marks and citations omitted). Applying this rule to Harrison, the statute of limitations began to run when he was released from prison, making his current action untimely.

The gloss on the *Spencer* rule provided in *Powers*, 501 F.3d at 601, does not compel a different conclusion. In *Powers*, a defendant had been wrongly incarcerated for one day. *Id.* The defendant argued that the *Heck* favorable-discharge rule did not apply because he had been released from prison. *Id.* This court agreed that the favorable-discharge rule did not apply, reasoning in part:

---

[1]The Second, Fourth, Seventh, Ninth, and Eleventh Circuits have also accepted the *Spencer* concurrence as law. *See Huang v. Johnson*, 251 F.3d 65, 75 (2d Cir. 2001); *Wilson v. Johnson*, 535 F.3d 262, 267–68 (4th Cir. 2008); *Carr v. O'Leary*, 167 F.3d 1124, 1127 (7th Cir.1999); *Nonnette v. Small*, 316 F.3d 872, 876–77 (9th Cir. 2002); *Harden v. Pataki*, 320 F.3d 1289, 1298 (11th Cir. 2003).

> What is dispositive in Powers's situation is not that he is no longer incarcerated, but that his term of incarceration—one day—was too short to enable him to seek habeas relief. It seems unlikely that Justice Souter intended to carve out a broad *Heck* exception for all former prisoners. The better reading of his analysis is that a § 1983 plaintiff is entitled to a *Heck* exception if the plaintiff was precluded "as a matter of law" from seeking habeas redress, but not entitled to such an exception if the plaintiff could have sought and obtained habeas review while still in prison but failed to do so. *See, e.g.*, *Guerrero v. Gates*, 442 F.3d 697, 705 (9th Cir. 2006) (holding that the plaintiff could not "now use his failure timely to pursue habeas remedies as a shield against the implications of *Heck*") (internal quotation marks omitted).

*Id.* This language suggests that the *Spencer* exception is limited, and reflects a concern that applying *Spencer* broadly would open the courthouse doors to every released prisoner. To the extent that this language can be read to limit the scope of the *Spencer* exception to *Heck*, the limit was not necessary to our holding in *Powers*, which applied *Spencer* (rather than the limit).

The policy animating the language in *Powers*, however, is not applicable in the statute-of-limitations context. The *Powers* gloss reflects a need to prevent a defendant from collaterally attacking a conviction where he had the opportunity to raise a habeas claim but did not. To effectuate this purpose, *Powers* proposed limiting the *Spencer* exception to instances where unconstitutional conduct could evade federal judicial review as a matter of law. It is, therefore, contrary to the purpose of *Powers* to extend the statute of limitations based on the *Powers* rule. In this case, allowing Harrison to use his purported failure to qualify for a *Spencer* exception as a shield against the statute of limitations would aggravate rather than allay the concern expressed in *Powers*. Were we to allow Harrison's claim, future plaintiffs could game the system—a prisoner could avoid the procedural hurdles of federal habeas review by simply not filing a petition. Where a defendant had the opportunity to file a habeas petition but did not, he cannot use that tactical decision to excuse an untimely § 1983 claim.