**Anthony ROSSO, Plaintiff–Appellant,**

v.

**The A.I. ROOT COMPANY, Defendant–Appellee.**

No. 02–4384.

United States Court of Appeals, Sixth Circuit.

April 13, 2004.

Richard C. Haber, Jonathan T. Hyman, Reminger & Reminger, Cleveland, OH, for Plaintiff–Appellant.

Bruce G. Hearey, Jennifer Cook Jontz, Spieth, Bell, McCurdy & Newell, Cleveland, OH, for Defendant–Appellee.

Before SILER, MOORE, and SUTTON, Circuit Judges.

SILER, Circuit Judge.

Plaintiff Anthony Rosso appeals the district court's grant of summary judgment to Defendant The A.I. Root Company ("A.I. Root"), which disposed of his claims for age discrimination, disability discrimination, and violation of Ohio public policy, all arising from the termination of his employment. We **AFFIRM.**

### BACKGROUND

John Root is president, and his son Brad is vice-president, of A.I. Root, a candle manufacturer. Bob Stanners, A.I. Root's chief operating officer, convinced John to hire a materials manager to implement a computerized materials planning software package. Rosso, then 58 years old, was hired as materials manager in 1997. In January 1999, Stanners evaluated Rosso's job performance; the results ranged from "usually exceeds position requirements" to "improvement needed." In November 1999, John, Brad, and Stanners met to discuss Rosso's job performance ("November meeting"). Stanners testified that

> [John] looked me straight in the eye and said, I want you to fire Tony Rosso. I asked why, and he said job performance.

And I said I do his evaluations, and I thought Tony was doing a pretty good job.... [John] said, well, Tony's old and I've got reports that he has a severe memory loss.... Then [John] asked me—after he said that—you know, he asked me if [Rosso had] been on any type of medication.... [John] looked to Brad [ ] and said, sounds like early Alzheimer's disease to me.... Then we got into—[John] asked me if I knew when Mr. Rosso was going to retire.

Shortly after the November meeting, John approved the purchase of $20,000 worth of computer software and training materials to aid Rosso in his position. Stanners submitted a memorandum to John expressing his discomfort from discussing Rosso's age and medical problems and their relation to his proposed termination.[1] In January 2000, Rosso received ratings similar to his 1999 evaluation and Stanners was discharged. Shandor Singer then began supervising Rosso. After A.I. Root's sales declined, Rosso was discharged at age 61 as a result of economic necessity in June 2000 and his position eliminated as part of a reduction in force ("RIF"), according to A.I. Root. The discharge was approximately six and one-half months after the November meeting.

Rosso sued A.I. Root for age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, disability discrimination in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, discrimination based upon a perceived disability in violation of Ohio Revised Code § 4112.01 *et seq.*, and tortious discharge in violation of Ohio public policy. A.I. Root was granted summary judgment on all claims.

## DISCUSSION

We review the district court's grant of summary judgment *de novo. Lautermilch v. Findlay City Schools,* 314 F.3d 271, 274 (6th Cir.2003). "Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Id.; see* Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

■ The ADEA prevents employers from discharging any employee because of age, 29 U.S.C. § 623(a)(1), and limits its prohibitions to employees who are at least 40 years old. 29 U.S.C. § 631(a). A terminated employee may establish an ADEA claim by presenting direct or circumstantial evidence of discrimination. *Wexler v. White's Fine Furniture, Inc.,* 317 F.3d 564, 570 (6th Cir.2003) (*en banc*) (citing *Kline v. Tennessee Valley Auth.,* 128 F.3d 337, 348 (6th Cir.1997)). Rosso is proceeding only on a theory of direct evidence. "Direct evidence of discrimination is 'that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions.'" *Id.* at 570 (quoting *Jacklyn v. Schering–Plough Healthcare Prods. Sales Corp.,* 176 F.3d 921, 926 (6th Cir.1999)).

■ John gave inconsistent reasons at the November meeting when discussing Rosso's termination. A mixed-motive analysis applies to cases "where an adverse employment decision was the product of a mixture of legitimate and illegitimate motives." *Id.* at 571 (citing *Price Waterhouse v. Hopkins,* 490 U.S. 228, 247, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989)), *superseded by statute on other grounds as*

---

1. A.I. Root strongly contests the integrity of this memo, claiming that Stanners fabricated

it to support his retaliatory discharge claim against A.I. Root.

stated in *Norbuta v. Loctite Corp.*, No. 98–4162, 2001 WL 45114, at \*9, 1 Fed.Appx. 305, 316 (6th Cir.2001). Rosso must first furnish direct evidence that A.I. Root considered impermissible factors when it decided to discharge him. *Wexler*, 317 F.3d at 571 (citing *Price Waterhouse*, 490 U.S. at 244–46). If Rosso demonstrates that A.I. Root's reason for his discharge "was made at least in part on a discriminatory basis, the burden shifts to [A.I. Root] to prove by a preponderance of the evidence that it would have taken the same adverse action even if impermissible factors had not entered into its decision." *Id.* at 571 (citing *Price Waterhouse*, 490 U.S. at 258).

■ Rosso fails to provide sufficient direct evidence of age discrimination. In *Phelps v. Yale Sec., Inc.*, 986 F.2d 1020, 1025 (6th Cir.1993), Phelps was transferred and replaced with a younger employee because she was too old to be the plant manager's secretary, although she was told she still would be if she were younger. Phelps was laid off during a RIF nearly a year later and sued under the ADEA. This court found that the supervisor's comments made eight months before Phelps's discharge were too isolated and ambiguous to support a finding of age discrimination.[2] *Id.* at 1026. Similarly, John's remarks were too isolated and ambiguous, as Rosso was employed for another six and one-half months before he was discharged. *Wilson v. Reliance Trading Corp. of Am.*, 208 F.3d 216, 2000 WL 282357, at \*1, 2000 U.S.App. LEXIS 3644, at \*4 (6th Cir. Mar. 6, 2000) (manager's two comments made approximately one year and six months before discharge too isolated to give rise to inference of dis-

crimination); *Kahl v. The Mueller Co.*, 1999 WL 196556, 1999 U.S.App. LEXIS 6294, at \*13 (6th Cir. Apr. 1, 1999) (alleged age-related comment made by supervisor eight months before termination deemed "stray remark" temporally distant from termination and insufficient to give rise to inference of discrimination).

There is no evidence that John subsequently communicated any discriminatory animus to Singer when he and Singer discharged Rosso. The uncontradicted evidence shows that Singer made his own observations of Rosso's difficulties on the product line, among other problems, and decided independently that Rosso should be let go in view of economic concerns. Singer communicated that decision to John, who deferred to Singer's judgment. Thus, the isolated and ambiguous remarks made by John (who did not make the decision to terminate Rosso) more than six months before Rosso was terminated, are insufficient by themselves to be direct evidence of discrimination. *See Hopkins v. Elec. Data Sys. Corp.*, 196 F.3d 655, 662–63 (6th Cir.1999) (isolated comment made by individual involved in termination process, but not decisionmaker, lacked sufficient nexus to plaintiff's termination six months later); *Greene v. St. Elizabeth Hosp. Med. Ctr.*, 1998 WL 13410, 1998 U.S.App. LEXIS 456, at \*7–8 (6th Cir. Jan. 7, 1998) (single, isolated comment made by a non-decisionmaker eight months before adverse employment action is not direct evidence of discrimination). Moreover, due to economic necessity, Rosso was discharged and his position eliminated as part of a RIF. *See Barnes v. GenCorp, Inc.*, 896 F.2d 1457, 1465 (6th Cir.1990) ("A work force reduction situa-

---

**2.** Phelps raised two comments made by her employer as allegedly age discriminatory: one from November 1987 and one from December 1987. After dismissing the December 1987 comment as ambiguous, the court found the November 1987 comment too isolated and temporally removed from Phelps's July 8, 1988 discharge to support a finding of age discrimination.

tion occurs when business considerations cause an employer to eliminate one or more positions within the company."). Summary judgment was proper.

 Rosso next argues that he was discharged due to a perceived disability. The purpose of the ADA is to eliminate employment discrimination based upon disability. 42 U.S.C. § 12101. Ohio similarly precludes disability discrimination in employment. O.R.C. § 4112.02(A). A victim of discriminatory treatment may proffer direct evidence of intentional discrimination under the ADA. *Hopkins,* 196 F.3d at 660. Since Rosso's ADA and state law claims require the same essential elements, we can consider them simultaneously. *Chadha v. Hardin Mem'l Hosp.,* 202 F.3d 267, 2000 WL 32023, at *3 (6th Cir.2000) (table).

Under 42 U.S.C. § 12102(2), "disability" is defined as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." *See also* O.R.C. § 4112.01(A)(13) (same). Rosso contends that John's remarks at the November meeting constitute direct evidence that A.I. Root perceived him as disabled. This argument fails, however, because A.I. Root's $20,000 investment in Rosso belies any argument that he was regarded as disabled. *See Kocsis v. Multi–Care Mgmt., Inc.,* 97 F.3d 876, 885 (6th Cir. 1996) (employee must demonstrate that "the perceived impairment is a substantial limitation on a major life activity"). Rosso cannot seriously contend that A.I. Root regarded him as disabled yet immediately invested a large sum of money in his work and risked his squandering it. If A.I. Root believed that Rosso was unable to perform his duties as materials manager, it would not have purchased the software and en-

trusted its economic prosperity with him. In addition, John's remarks were isolated and abstract since Rosso was discharged six and one-half months after the November meeting. *See Hopkins,* 196 F.3d at 661; *see also Wilson,* 2000 U.S.App. LEXIS 3644, at *4; *Kahl,* 1999 U.S.App. LEXIS 6294, at *13; *Greene,* 1998 U.S.App. LEXIS 456, at *7–8. Again, summary judgment was proper.

██ Rosso lastly contends that the trial court erred in granting A.I. Root summary judgment because of Ohio's exception to the employment-at-will doctrine, which applies "when an at-will employee is discharged or disciplined for a reason that contravenes clear public policy." *Kulch v. Structural Fibers, Inc.,* 78 Ohio St.3d 134, 677 N.E.2d 308, 321 (1997). As Rosso failed to present direct evidence regarding either his age or disability discrimination claims, his public policy argument necessarily fails. *See Skrjanc v. Great Lakes Power Serv. Co.,* 272 F.3d 309, 317 (6th Cir.2001) (failure to prove federal statutory violation precludes violation of Ohio public policy). Therefore, summary judgment was proper.

**AFFIRMED.**

MOORE, Circuit Judge, dissenting.

It is difficult to imagine more explicit direct evidence of age and disability discrimination than the direct statement by a supervisor that he wished to fire an employee, based partially on age, memory loss, and supposed early-onset Alzheimer's disease. That statement, made by the president of A.I. Root but six months before Anthony Rosso was discharged, provides sufficient direct evidence of age and disability discrimination to allow this case to go before a jury. I believe *Phelps v. Yale Security, Inc.,* 986 F.2d 1020 (6th Cir.1993) is not to the contrary. While the time frame in this case is slightly shorter

than in *Phelps*, I believe the lack of ambiguity in Root's comments and the evidence of an attempt to conceal unlawful discrimination (i.e., the firing of Bob Stanners) makes this a markedly different case. Here, the discriminatory comment was directed explicitly to the adverse employment action at issue.

This is not a situation where uncontroverted facts can provide support for two different motives in firing an employee; instead, John Root denies entirely making the comments at issue, and Root alleges that Stanners, the witness to these comments, fabricated a subsequent memo memorializing them. Stanners's retaliation claim, based on his own firing after his memo was written and sent, not only was allowed to go forward from the summary judgment stage by the district judge, but also has now resulted in a jury verdict for Stanners. John Root may not have made any further comments regarding Rosso's age and supposed disability, but that is entirely consistent with a realization by Root that Stanners wasn't going to "play along" and that further attempts at concealing Root's true motives might be necessary. The $20,000 investment in software and training manuals could be further evidence of this attempt at concealment, and even if it is not, it merely places Root's intentions in dispute. Additionally, that Singer claimed to be the ultimate is to be believed (as he was by a jury), Root has been untruthful in his representations of past events, and it is no large leap to imagine him pressuring subordinates to do the same.

It is incomprehensible to me that in the face of this ultra-factual dispute, where one witness is lying outright, the majority would hold that Rosso failed to provide sufficient direct evidence of discrimination to withstand summary judgment. The contrary evidence produced by A.I. Root does not close the book on Rosso's claims; that the court does so today is a fundamental misapplication of the summary judgment standard, and so I respectfully dissent.