NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 17a0380n.06

Case No. 16-6502

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| FLORA PARKHURST, | ) | **FILED** |
| | ) | Jun 27, 2017 |
| Plaintiff-Appellant, | ) | DEBORAH S. HUNT, Clerk |
| | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE MIDDLE DISTRICT OF |
| AMERICAN HEALTHWAYS SERVICES, | ) | TENNESSEE |
| LLC, | ) | |
| | ) | |
| Defendant-Appellee. | ) | |

BEFORE: GIBBONS, COOK, and GRIFFIN, Circuit Judges.

COOK, Circuit Judge. For eleven years, Flora Parkhurst worked as a nurse for American Healthways Services (AHS) until it fired her in February 2014. Parkhurst then sued AHS, alleging that her termination was the product of age discrimination in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.*, disability discrimination in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*, and retaliation in violation of the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2601 *et seq.* The district court granted summary judgment to AHS, concluding that Parkhurst failed to show that its legitimate, nondiscriminatory reason for terminating her—poor job performance—was a pretext for unlawful discrimination or retaliation. We AFFIRM.

## I.

### A. Factual Background

AHS contracts with employers and health insurers to provide wellness programs to their employees and insureds, respectively. One of AHS's services is the Well-Being Improvement Center (WBIC), a call center in which "Telephonic Nurses" provide clinical advice to AHS enrollees, or "members." During most calls, Telephonic Nurses help members manage chronic ailments like heart disease and diabetes.

In December 2002, AHS hired Parkhurst as a Telephonic Nurse at its Franklin, Tennessee, WBIC. A little over ten years later, in January 2013, Lori Koyuncu took over as Parkhurst's supervisor. At the time, Parkhurst was 59 and suffered from an abnormal heart rhythm that she claims is a disability under the ADA.[1] Surgery to treat this condition required her to take ten days off in October 2013. Parkhurst provided Koyuncu advance notice of the surgery. She also applied for and received leave under the FMLA to cover her absence.

Meanwhile, Parkhurst struggled to keep up with the demands of her job. AHS evaluates Telephonic Nurses' productivity using a metrics-based system that tracks their attempted and successful calls per hour. To qualify as a successful call, the nurse must address a prescribed list of topics with the member. In 2013, AHS required Telephonic Nurses to make an average of 5.55 call attempts per hour and 1.05 successful calls per hour. That October, however, Parkhurst averaged only 3.17 call attempts and 0.51 successful calls per hour, prompting Koyuncu to place Parkhurst on a Written Performance Improvement Plan the next month ("November PIP"). The plan aimed to help Parkhurst meet AHS's productivity requirements.

---

[1] AHS conceded this point in moving for summary judgment. We thus assume it to be true without deciding the issue.

Parkhurst claims that, beginning that November, Koyuncu made the following comments to her, or something like them, in discussing her performance:

- "Well, the reason you're not meeting your metrics is probably because you're not feeling well. It's probably—you know, maybe you need to find a job closer to home."

- "At your age it's very—it's hard to keep up."

- "Healthways is very—is a different company now. It's very difficult to keep up."

- "Well, you need to probably think about a job closer to home. Your health is an issue. You have had a lot of health issues."

- The responses, "Oh, again?" or "Okay," when Parkhurst submitted paperwork related to her request for FMLA leave.

- "Isn't it time for you to retire? Why don't you retire? You drive so far to work. Have you considered another job, a job that's not so fast-paced?"

Over the next two-and-a-half months, Parkhurst's average call attempts and successful calls per hour improved, but they never reached AHS's minimum requirements: [2]

| Dates | Attempted Calls Per Hour | Successful Calls Per Hour |
|---|---|---|
| 11/1/13–11/15/13 | 4.10 | 0.90 |
| 12/30/13–1/4/14 | 3.16 | 0.50 |
| 1/6/14–1/11/14 | 4.41 | 0.97 |
| 1/13/14–1/18/14 | 3.23 | 0.90 |

Consequently, on January 17, 2014, Koyuncu placed Parkhurst on another Written PIP ("January PIP"). Earlier that month, AHS had increased its successful call attempts per hour requirement from 1.05 to 1.50, and its attempted calls per hour requirement from 5.55 to 8.00. The January PIP again endeavored to help Parkhurst achieve these new standards. Koyuncu met with Parkhurst a few days after giving her the January PIP to discuss Parkhurst's performance

---

[2] The parties do not explain the gap in recorded metrics for the month of December, but it appears from the record that the WBIC was not available to members during that time period. In any event, Parkhurst makes no issue of this gap on appeal.

and AHS's updated metrics expectations. During the meeting, the supervisor explained to Parkhurst that her failure to complete the new PIP could result in her losing her job. Nevertheless, Parkhurst's productivity remained largely stagnant after the January PIP:

| Dates | Attempted Calls Per Hour | Successful Calls Per Hour |
|---|---|---|
| 1/20/14–1/25/14 | 3.14 | 0.54 |
| 1/27/14–2/1/14 | 5.43 | 1.00 |
| 2/3/14–2/8/14 | 3.74 | 0.89 |

Citing Parkhurst's failure to improve, Koyuncu placed Parkhurst on a Final Performance Improvement Plan ("Final PIP") on February 11, 2014. This PIP afforded Parkhurst a two-week period to achieve the required 8.00 call attempts per hour and 1.50 successful calls per hour. The plan made clear that her failure to meet these demands would result in termination. Parkhurst fell short of meeting these requirements.

| Dates | Attempted Calls Per Hour | Successful Calls Per Hour |
|---|---|---|
| 2/10/14–2/15/14 | 5.27 | 0.74 |
| 2/17/14–2/22/14 | 4.55 | 1.44 |

AHS terminated Parkhurst, citing her poor productivity. Parkhurst admitted that she expected to be fired because she had not met the WBIC performance metrics.

The Telephonic Nurses reporting to Koyuncu during this period ranged in age from 39 to 74. Ten nurses were within ten years of Parkhurst's age: Debra Murdic (62), Cathy Orvis (67), Stephanie Blansett (66), Lee Carrington (67), Mary Fowler (62), Lenoir Francisco (72), Barbara Hill (74), Holly Mueller (59), Mozelle Smith (53), and Sherry Vasey (59). (*Id.*) Both Smith and Vasey, like Parkhurst, used FMLA leave while under Koyuncu's supervision. Three of the nurses, Murdic, Fowler, and Vasey, still work at AHS. Another three, Hill, Mueller, and Smith, voluntarily resigned from AHS but were satisfactory performers during the relevant period.

**B.  Procedural Background**

Parkhurst timely sued AHS, alleging that her termination constituted age discrimination in violation of the ADEA, disability discrimination in violation of the ADA, and retaliation under the FMLA.  After discovery, AHS moved for summary judgment on all of Parkhurst's claims, arguing, in part, that Parkhurst could not prove that its stated reason for terminating her employment—poor productivity—was pretext for unlawful discrimination or retaliation.  The district court agreed, granting summary judgment to AHS.

## II.

We review the district court's decision to grant summary judgment to AHS de novo, affirming if the evidence demonstrates that no genuine issue exists as to any material fact and that AHS is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Ramsey v. Penn Mut. Life Ins. Co.*, 787 F.3d 813, 818 (6th Cir. 2015).  A dispute is genuine if a reasonable jury could return a verdict for Parkhurst.  *Tysinger v. Police Dep't of Zanesville*, 463 F.3d 569, 572 (6th Cir. 2006).  "The court must view the evidence in the light most favorable to [Parkhurst] and draw all reasonable inferences in [her] favor."  *Id.*

## III.

We analyze all of Parkhurst's claims using the same framework.  When a plaintiff presents circumstantial evidence of age discrimination in violation of the ADEA, disability discrimination in violation of the ADA, or retaliation under the FMLA, we apply the burden-shifting approach set forth in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973).  *See Demyanovich v. Cadon Plating & Coatings, L.L.C.*, 747 F.3d 419, 432–33 (6th Cir. 2014); *Geiger v. Tower Automotive*, 579 F.3d 614, 622 (6th Cir. 2009).  Under this framework, a claimant has the initial burden of establishing a prima facie case of unlawful discrimination or

retaliation under the applicable statute. *See McDonnell Douglas*, 411 U.S. at 802. If the claimant can clear that hurdle, the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for the adverse employment action at issue. *See id.* Should the employer successfully do so, the burden reverts to the claimant, who must show that the employer's proffered reason was in fact pretext for a discriminatory or retaliatory motive, or else face dismissal of her claims. *See id.* at 804.

The district court determined that Parkhurst satisfied the appropriate prima facie burdens to show age discrimination, disability discrimination, and FMLA retaliation.[3] It concluded, however, that she failed to present sufficient evidence to create a genuine issue of material fact that AHS's stated reason for firing her—poor job performance—was pretext for unlawful discrimination or retaliation. On appeal, Parkhurst argues that the district court erred at this last step. We disagree.

"[A] plaintiff can show pretext in three interrelated ways" by showing: "(1) that the [employer's] proffered reasons [for the adverse employment action] had no basis in fact, (2) that the proffered reasons did not actually motivate the employer's action, or (3) that they were insufficient to motivate the employer's action." *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009) (citing *Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 460 (6th Cir. 2004)). In assessing the evidence before us, we keep in mind that "[p]retext is a commonsense inquiry: did the employer fire the employee for the stated reason or not?" *Id.* at 400 n.4.

When a plaintiff argues a did-not-actually-motivate theory of pretext, as Parkhurst does here, she "admits the factual basis underlying the employer's proffered explanation and further

---

[3] AHS does not contest this holding on appeal. We thus assume without deciding that Parkhurst made out prima facie cases of discrimination under the ADA and ADEA, and retaliation under FMLA.

admits that such conduct *could* motivate dismissal[.]" *Bhama v. Mercy Mem'l Hosp. Corp.*, 416 F. App'x 542, 551 (6th Cir. 2011) (citation omitted). To prove her case, "the plaintiff argues that the sheer weight of the circumstantial evidence of discrimination makes it more likely than not that the employer's explanation is a pretext, or coverup." *Id.* (citation and internal quotation marks omitted).

Here, Parkhurst acknowledges that she failed to meet AHS's productivity standards for its Telephonic Nurses, despite being given three opportunities—in the form of PIPs—to do so over several months. She also concedes that AHS retained six nurses on Parkhurst's team around the same age as or older than Parkhurst who were satisfactory performers; and that AHS retained two nurses on Parkhurst's team who also took FMLA leave under Koyuncu's supervision. Parkhurst nonetheless contends that her poor performance at AHS did not actually motivate its decision to fire her, relying on: (i) the string of age-, disability-, and health-related comments Koyuncu allegedly made to her beginning in November 2013 concerning her ability to keep up with the demands of her job, and (ii) the temporal proximity between her FMLA leave and her termination. She also suggests, for the first time on appeal, that pretext is established because AHS held her to a higher standard than the other Telephonic Nurses.

We begin by addressing Koyuncu's alleged comments. Although a supervisor's statements concerning an employee's age, disability, or requested FMLA leave can be probative of discriminatory or retaliatory intent, "isolated and ambiguous comments are too abstract, in addition to being irrelevant and prejudicial, to support a finding" of unlawful discrimination. *Phelps v. Yale Sec., Inc.*, 986 F.2d 1020, 1025 (6th Cir. 1993) (citation and internal quotation marks omitted); *see also Hartman v. Dow Chem. Co.*, 657 F. App'x 448, 456 (6th Cir. 2016); *Rosso v. A.I. Root Co.*, 97 F. App'x 517, 521 (6th Cir. 2004).

The references to age, retirement, and health in Koyuncu's statements (listed above) are isolated and ambiguous. *See* Phelps, 986 F.2d at 1025. They do not evidence FMLA-, age-, or disability-related animus. First, Koyuncu's purported responses of "Oh, again?" and "Okay" to Parkhurst's leave request are simply too vague to decipher. Because these are the only comments that are connected, in any way, with Parkhurst's request for FMLA leave, we find there was no FLMA-related animus. Similarly, we question whether Koyuncu's statement about AHS being a "different company" where it is "very difficult to keep up" is clear enough to support a claim of disability or age discrimination. And although the four other age-and health-related remarks appear problematic in isolation, they could just as easily be interpreted in context as expressions of sympathy and concern for Parkhurst. *See Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 287 (6th Cir. 2012) (employer's comment to plaintiff that he was "lazy and didn't work and wasn't doing his job and had been there too long" was ambiguous because it could "just as easily refer to tenure" and therefore was not probative of age discrimination); *Phelps*, 986 F.2d at 1025–26 (concluding that a comment that the plaintiff's fifty-fifth birthday "was a cause for concern" was "too ambiguous to establish the necessary inference of age discrimination"); *accord Curry v. Brown*, 607 F. App'x 519, 523–24 (6th Cir. 2015) (concluding that supervisor's comment that employee "should probably focus on her health rather than worry about the stress of supervising people" was not direct evidence of FMLA-leave retaliation in part because the comment "could instead be inferred as conciliatory in that [the supervisor] was encouraging [the plaintiff] to think about her health"). At best, Parkhurst's disability-discrimination claim turns on whether Koyuncu's two comments about Parkhurst finding a job closer to home because of her health issues provide sufficient evidence of a discriminatory motive. And her age-discrimination claim turns on (i) Koyuncu's remark that it was difficult for

Parkhurst to keep up at her age, and (ii) Koyuncu's questioning as to whether Parkhurst had thought about retiring or finding a different job. On this record, neither pair of comments is concrete enough to support a finding of discriminatory animus. The comments, alone, are insufficient to allow a reasonable jury to find it more likely than not that Parkhurst's performance was pretext for FMLA-, age-, or disability-related retaliation, even when drawing all reasonable inferences in her favor.

Further, context matters: Koyuncu allegedly uttered the remarks during conversations about Parkhurst failing to meet her metrics. That Koyuncu may have acknowledged Parkhurst's age or health as possible explanations for her poor performance is beside the point. The remarks do not undercut AHS's claim that deficient productivity—whatever the conjectured cause—was the basis for Parkhurst's termination. *See Clark v. Walgreen Co.*, 424 F. App'x 467, 472, 474 (6th Cir. 2011) (per curiam) (concluding that supervisor's post-FMLA leave, health-related comments to plaintiff, including statement that "because of your health, we're just going to go ahead and terminate you," "appear[ed] to address [plaintiff's] *post*-leave job performance as a function of his health" and therefore failed to show direct evidence of FMLA retaliation, nor did it support an inference of pretext in light of the great weight of the evidence concerning plaintiff's "malfeasance").

We turn next to the temporal proximity between Parkhurst's surgery, her associated FMLA-leave, and the termination of her employment. Such evidence bears only on her FMLA-retaliation claim and, potentially, her ADA-discrimination claim. Although "suspicious timing is a strong indicator of pretext," it is so only "when accompanied by some other, independent evidence" of discrimination or retaliation. *Seeger v. Cincinnati Bell Tel. Co., LLC*, 681 F.3d 274, 285 (6th Cir. 2012) (quoting *Bell v. Prefix, Inc.*, 321 F. App'x 423, 431 (6th Cir. 2009)).

Parkhurst underwent cardiac surgery in October 2013, taking ten days of FMLA leave that month. AHS terminated her employment in February 2014, over four months later. A four-month lapse between Parkhurst's FMLA leave and her termination, when considered alongside her documented underperformance, is hardly "suspicious." But even if considered so, that fact alone cannot support an inference of discriminatory or retaliatory motive given the lack of other circumstantial evidence in this case. *See Cooper v. City of N. Olmsted*, 795 F.2d 1265, 1272 (6th Cir. 1986) ("The mere fact that [plaintiff] was discharged four months after filing a discrimination claim is insufficient to support an interference of retaliation.").[4] Koyuncu's comments do not provide enough circumstantial evidence to overcome this hurdle.

Finally, we address Parkhurst's argument that AHS subjected her to different productivity standards than the other Telephonic Nurses. Specifically, she says that her team members only needed to satisfy the attempted calls per hour metric, or the successful calls per hour metric, but not both. In support of this claim she alleges the existence of an AHS document that shows comparative performance. She also identifies Mozelle Smith as an employee on a performance improvement plan who was held to a lower standard. Since Parkhurst failed to raise it below, we consider it forfeited. *Hayward v. Cleveland Clinic Found.*, 759 F.3d 601, 615 (6th Cir. 2014) (citing *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 552 (6th Cir. 2008)); *Bhama*, 416 F. App'x at 552 (citations omitted). In any event, Parkhurst herself testified that all Telephonic Nurses on Koyuncu's team were required to meet the same productivity standards, thus belying her new stance. And she has failed to produce the alleged document and did not depose Smith or anyone

---

[4] Parkhurst requested FMLA leave three other times during the period Koyuncu supervised her: once for health reasons, which AHS granted, and twice to care for her spouse, both of which AHS denied. These other leave requests occurred several months before her October 2013 surgery. Thus, to the extent that Parkhurst's argument hinges on these other leave requests, we find the timeframe too attenuated to show pretext, for the reasons already discussed.

else who could corroborate her claims. Even if we were to credit her claim now, the argument is a non sequitur: Parkhurst failed to meet either metric, so her performance would have been deficient even if AHS had held her to the same purported standard as other employees.

In sum, Koyuncu's alleged comments and the four-month gap between Parkhurst's surgery and termination do not provide enough to infer that what actually motivated AHS's decision to fire Parkhurst was her age, alleged disability, or FMLA leave, rather than her documented performance deficiencies.

## IV.

We AFFIRM the district court's judgment.