NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 18a0041n.06

No. 17-5484

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| ROBERT M. BLOCK, | ) | FILED<br>Jan 22, 2018<br>DEBORAH S. HUNT, Clerk |
|  | ) |  |
|  | ) |  |
| Plaintiff-Appellant, | ) |  |
|  | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
|  | ) | COURT FOR THE MIDDLE |
|  | ) | DISTRICT OF TENNESSEE |
| MEHARRY MEDICAL COLLEGE | ) |  |
|  | ) |  |
| Defendant-Appellee. | ) |  |

BEFORE: CLAY, GIBBONS, and COOK, Circuit Judges.

**JULIA SMITH GIBBONS, Circuit Judge.** In 2011, Robert Block, a Caucasian man, was hired as a professor of dentistry at Meharry Medical College, a historically black institution. Block served as an associate professor and as chair of the school's Endodontics Department until June 2013. During this time period, Meharry's administration received multiple complaints regarding Block, and he was repeatedly reprimanded for his unprofessional behavior. In June 2013, Block was informed that although he would retain his associate professor position, his chair position would not be renewed for the following year. Block then filed an EEOC claim against Meharry, was issued a right to sue letter, and brought this suit in district court.

In the district court, Block raised two primary issues: First, Block claimed discrimination based on his alleged demotion from full professor to associate professor. Second, Block brought discrimination and retaliation claims based on his removal as Chair of Endodontics. The district court granted summary judgment for Meharry, finding that the discrimination claim based on the

alleged associate-professor demotion was time-barred and that Block had failed to show that Meharry's reason for nonrenewal of his chair position—his unprofessional conduct—was pretextual. We agree with these conclusions and affirm the district court's grant of summary judgment.

I.

Meharry Medical College ("Meharry") is a private historically black institution in Nashville, Tennessee, that operates a school of dentistry, in addition to other graduate programs. Janet Southerland, an African American woman, was hired to serve as the Dean of Meharry's School of Dentistry in 2011, and shortly thereafter she recruited Block to the Meharry faculty. On September 9, 2011, Block received an offer letter from Southerland for employment as a full-time faculty member and as Chair of the Endodontics Department. This offer letter did not specify Block's faculty rank.

Meharry has three ranks of professors: full professor, associate professor, and assistant professor. These professorial ranks generally operate separately from tenure considerations, but a full professor position is necessarily tenured or on a tenure track. When Southerland executed Block's original contract, she listed his faculty rank as "full professor" and checked the "tenure" box. A few days later, however, when President of Meharry Wayne Riley executed Block's contract (as required for new appointees), he marked through the "tenured" box and checked "non-tenured specific term" instead, though he did not change the listed faculty rank.

At the time of his hiring, Block was informed that his appointment was subject to review and approval by Meharry's Appointments, Promotions, and Tenure Committee. When that committee met in October 2011, it approved his appointment as a non-tenured associate professor. The committee sent Block a letter to this effect on November 17, 2011, though Block

claims he did not receive it until February 2012. Thereafter, Block repeatedly referred to himself as an "associate professor" in correspondence, including in e-mails to Meharry colleagues.

Block began teaching at Meharry and serving in his position as Chair of the Endodontics department. One of his responsibilities as chair was to oversee the Endodontics clinic. There were, however, numerous scheduling issues with Block and the clinic. One month after Block was hired, the Meharry administration received complaints from students about Block's tardiness to the clinic. Block responded in an e-mail to these complaints by calling them "complete bs." DE 77-3, Ex. 26, Page ID 1222. In September 2012, Meharry's Clinical Dean instructed Block that the Endodontics clinic should be kept open five days a week, but Block resisted this instruction and indicated he would not have time to maintain those hours.

In addition to issues with the clinic, Block also demonstrated temperament and professionalism issues while at Meharry. Block was reprimanded in February 2012 for sending rude e-mails to an outside vendor. And in March 2012, Block had a confrontation with Professor Gregory Stoute's assistant, Jamika Young, in which he "stepped toward [her] desk and shook his hand angrily in [her] face" saying that he needed to see Stoute. DE 77-6, Ex. 10, Page ID 1471. Another assistant reported discomfort with Block's confrontational behavior toward her that same week, and Shunta Curry-Sprouse, Southerland's assistant, expressed that she also had a personal experience with this type of behavior from Block. In August 2012, Block received a formal reprimand for his "insubordination and unprofessionalism," and Block's June 2013 year-end evaluation by Stoute—who served as the Executive Vice Dean and oversaw department chairs—raised concerns about Block's "breaches of professionalism," "confrontational altercations," and "belligerent" behavior toward colleagues. DE 77-1, Ex. 22, Page ID 899; Ex. 33, Page ID 925. Block declined to meet with Stoute to discuss this evaluation.

In June 2013, Southerland decided not to renew Block as Chair of the Endodontics Department, citing his unprofessional and confrontational behavior. Stoute, who is African American and is not an endodontist, replaced Block as Chair of the Endodontics Department.

Block filed an EEOC charge on November 20, 2013, alleging that his demotion from professor to associate professor was illegal discrimination and that removal of his chair position was illegal discrimination and retaliation. Block's alleged discrimination was based on his Caucasian race. And Block's claim of retaliation was premised on complaints he had allegedly made about his demotion and his purported defense of Gurbhajan Singh, an Indian Sikh and professor of Periodontics at Meharry, who had been demoted and then later terminated.[1]

Block was issued a right to sue letter and brought this suit in district court under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et. seq.* and the Civil Rights Act of 1991, 42 U.S.C. § 1981a *et. seq.* The district court granted summary judgment for Meharry, finding that Block's discrimination claim based on the alleged associate-professor demotion was time-barred and that, as to the other claims, Block had failed to show that Meharry's reason for nonrenewal of his chair position—his unprofessional conduct—was pretextual. Block then filed this appeal.

## II.

This court reviews a district court's grant of summary judgment *de novo*. *Kalich v. AT&T Mobility, LLC*, 679 F.3d 464, 469 (6th Cir. 2012). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the court must "draw all reasonable inferences in favor of the nonmoving

---

[1] Block claims to have engaged in various protected activities defending Singh, but the only specific action he points to on appeal is that he stated in an April 2013 meeting with representatives of the American Dental Association Commission on Dental Accreditation ("CODA"), which was evaluating Meharry's accreditation, that he believed Singh had been the victim of discrimination by Meharry.

party." *Int'l Union v. Cummins, Inc.*, 434 F.3d 478, 483 (6th Cir. 2006) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). The Court then asks "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).

III.

A.

Block first argues that the district court erred in granting Meharry summary judgment on his discrimination claim stemming from his alleged demotion from full professor to associate professor. We affirm the district court's holding that the claim is time-barred.

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). To maintain a Title VII cause of action against an employer, however, an employee must first file an EEOC charge; if an employee files this charge with the state-equivalent EEOC agency, they must do so "within three hundred days after the alleged unlawful employment practice occurred."[2] 42 U.S.C. § 2000e-5(e); *see also Mohasco Corp. v. Silver*, 447 U.S. 807, 825 (1980) ("By choosing what are obviously quite short deadlines, Congress clearly intended to encourage the prompt processing of all charges of employment discrimination."). This limitations period begins to run when an employer makes and communicates a final decision to the employee and the employee is aware or reasonably

---

[2] Block filed his charge of discrimination with the Tennessee Human Rights Commission, though the district court opinion and the briefs use the vernacular "EEOC" complaint. This is notable only because when pursuing a charge initially with an equivalent state agency, a plaintiff has 300 days from an act of discrimination to bring a charge, but when brought with the EEOC directly, a plaintiff has only 180 days. 42 U.S.C. § 2000e-5; *see Cox v. City of Memphis*, 230 F.3d 199, 202 n.2 (6th Cir. 2000).

should be aware of the employer's decision. *Del. State Coll. v. Ricks*, 449 U.S. 250, 258 (1980);

*E.E.O.C. v. United Parcel Serv., Inc.*, 249 F.3d 557, 561–62 (6th Cir. 2001).

Here, as an initial matter, there is evidence that Block never even suffered an adverse

employment action related to his professorial rank during his time at Meharry. An adverse

employment action requires "a materially adverse change in the terms and conditions of

[a plaintiff's] employment," such as a "significant change in employment status," and not

including a "bruised ego." *Spees v. James Marine, Inc.*, 617 F.3d 380, 391 (6th Cir. 2010)

(alteration in original) (internal quotation marks omitted) (quoting *White v. Burlington N.

& Santa Fe Ry. Co.*, 364 F.3d 789, 795, 797–98 (6th Cir. 2004) (en banc)). The record indicates

that Block's faculty rank did not change during the course of his employment by Meharry and

instead that Block always held the title of associate professor—though at times he may have

mistakenly believed that he was a full professor. In the absence of an adverse employment

action, a plaintiff cannot sustain a discrimination claim. *See Burlington N. & Santa Fe Ry. Co.*,

364 F.3d at 795 ("[C]ourts have made clear that not just any discriminatory act by an employer

constitutes discrimination under Title VII."). At oral argument, however, counsel for Meharry

conceded for the purposes of the summary judgment motion that Block had suffered an adverse

employment action based on his alleged demotion from full professor to associate professor.

Even so, the timing of Block's complaint bars his claim.

The district court held that Block's allegation of discrimination as it relates to his

demotion from full professor to associate professor was time-barred because the discrete ultimate

employment decision triggering his claim occurred, at the latest, in February 2012, and Block did

not file a charge with the EEOC until November 20, 2013—well after the 300-day cutoff of

January 24, 2013. In response, Block claims that there is a question of fact regarding when he

was demoted from professor to associate professor. He points to a statement allegedly made to CODA by Meharry in August 2012 that Block was a full professor and to Block's proposed annual contract in 2012, which "continued to identify Plaintiff Block as a full professor," to claim that he believed he was a full professor at that time. These alleged inconsistencies, however, cannot salvage Block's claim, as no rational juror could conclude that by February 2012 Block was not fully aware of his status as an associate professor.

The date an alleged discrimination occurs and the limitations period commences is when a "decision [is] made and communicated." *See Del. State Coll.*, 449 U.S. at 258. Block admits on multiple occasions, including in his complaint and in a filed statement of material facts to the district court, that he received a letter from Southerland formally advising him that he was approved at the rank of associate professor in February 2012.[3] These admissions foreclose Block's argument that he did not know of his status until after February 2012.

Moreover, ample additional evidence shows that Block was aware of his status as an associate professor prior to January 24, 2013, the earliest possible date within the limitations period. For example, in a March 2012 letter to Southerland, Block wrote "I was hired on September 21st, 2011 . . . as Associate Professor and Chairman of the Department of Endodontics" and included in his signature block the designation "Associate Professor." DE 77-1, Ex. 35, Page ID 927–30. Additionally, on September 19, 2012, Southerland advised Block by written letter that his application for promotion to full professor was denied because he had less than five years' experience as an associate professor. The district court, therefore, correctly concluded that the alleged discrimination occurred outside the limitations period.

---

[3] This letter is actually dated November 17, 2011, though Block claims that he did not receive it until February 2012. Because February 2012 is also outside of the limitations period, we use this as the relevant date.

Block tries to overcome the statute of limitations bar by claiming that his demotion should be considered a separate, continuing violation under Title VII because there was an "unlawful practice that continu[ed] into the limitations period." CA6 R. 15, Appellant Br., at 27. But this claim is without merit.

A continuing violation presents a "narrow exception" to the usual requirement to bring an EEOC complaint within the limitations period. *Cox v. City of Memphis*, 230 F.3d 199, 202 (6th Cir. 2000). An employee can demonstrate a continuing violation in two ways, one of which is by showing there is "an ongoing, continuous series of discriminatory acts." *Id.* Block claims his June 2013 contract, which offered him the position of associate professor, was such an ongoing unlawful act for the life of the contract. A party, however, cannot claim a continuing violation based on "continuing effects of past discriminatory acts," *id.*, and here Block's employment as an associate professor under the 2013 contract was simply the "ongoing effect[] of an allegedly illegal action . . . ." *Hebron v. Shelby Cty. Gov't*, 406 F. App'x 28, 31 (6th Cir. 2010) (finding the institution of new promotion procedures to be the alleged violation while subsequently following those procedures did not amount to a continuing violation). The contract reflected that Block held the status of an associate professor, and Meharry was simply acting consistently with its earlier announcement that it considered Block an associate professor. This action, therefore, did not amount to a continuing violation and did not keep the limitations clock running. *See id*; *Cox*, 230 F.3d at 202.

Finally, Block asserts that equitable estoppel or equitable tolling should apply here to toll the statute of limitations and allow him to pursue his claim. Block, however, did not raise these arguments in his response to Meharry's motion for summary judgment in the district court, and they are therefore waived. *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 552 (6th Cir. 2008)

("[A]n argument not raised before the district court is waived on appeal to this Court."). Block's inclusion of this argument in his Rule 59(e) motion to alter or amend the judgment did not revive it. *See id.* at 553; *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998) ("A motion under Rule 59(e) is not an opportunity to re-argue a case.").

Accordingly, the district court properly held that Block's claim of discrimination based upon his purported demotion from full professor to associate professor was time-barred.

B.

Block next challenges the district court's grant of summary judgment for Meharry on Block's discrimination and retaliation claims related to his June 2013 nonrenewal as Chair of the Endodontics department. The district court concluded that because Block failed to create a genuine issue of fact that Meharry's reasoning for his removal—his unprofessional conduct— was pretext, he could not succeed on these claims. We agree and affirm the district court.

1.

A plaintiff in a race discrimination claim "has the burden of proving by a preponderance of the evidence a prima facie case." *Nguyen v. City of Cleveland*, 229 F.3d 559, 562 (6th Cir. 2000) (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252–53 (1981)). If the plaintiff makes such a showing, "the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse action." *Id.*; *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–83 (1973). The plaintiff then must show that this reason is pretext. *Nguyen*, 229 F.3d at 562. The district court concluded that Block made a *prima facie* case of discrimination but that Meharry had articulated a legitimate, non-discriminatory reason for the removal of Block's chair position. On appeal, the parties focused their arguments on whether the

district court correctly concluded that Block failed to show that this non-discriminatory reason was pretext.

"If an employer has an 'honest belief' in the nondiscriminatory basis upon which it has made its employment decision (i.e. the adverse action), then the employee will not be able to establish pretext." *Tingle v. Arbors at Hilliard*, 692 F.3d 523, 530–31 (6th Cir. 2012) (quoting *Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1117 (6th Cir. 2001)); *see also Chen v. Dow Chem. Co.*, 580 F.3d 394, 401 (6th Cir. 2009) ("When an employer reasonably and honestly relies on particularized facts in making an employment decision, it is entitled to summary judgment on pretext . . . ."). The basis of this honest belief must come from particularized facts that were before the employer when the decision was made, allowing the employer to make a "reasonably informed and considered decision before taking an adverse employment action." *See Braithwaite v. Timken Co.*, 258 F.3d 488, 494 (6th Cir. 2001) (quoting *Smith v. Chrysler Corp.*, 155 F.3d 799, 807 (6th Cir. 1998)). To overcome this honest belief and demonstrate pretext, the plaintiff must produce sufficient evidence from which the jury could reasonably reject this explanation and instead infer that the defendant intentionally discriminated against him. *Id.* at 493. Disputing facts is not enough—instead, the plaintiff must produce evidence "demonstrat[ing] that the employer did not 'honestly believe' in the proffered non-discriminatory reason for its adverse employment action." *Id.* at 494.

As Meharry contends, and as the district court found, Meharry chose to remove Block from his position as chair based on its honest belief "that Dr. Block's professionalism and behavior fell below the standard for a department chair position." DE 134, Summ. J. Mem., Page ID 2418. At the time it made its decision, Meharry had before it ample evidence of Block's hostile behavior toward his coworkers and multiple examples of unprofessional behavior in the

workplace. For example, Block was reprimanded in February 2012 for sending rude e-mails to an outside vendor. Similarly, in March 2012, Meharry's administration received reports that Block yelled at Stoute's administrative assistant and behaved rudely toward another assistant. In August 2012, Block received a formal reprimand for his "insubordination and unprofessionalism." DE 77-1, Ex. 22, Page ID 899. Then, in September 2012, when Meharry's Clinical Dean instructed Block to keep the Endodontics clinic open five days a week, Block rebuffed her and stated he would not have time. These and other incidents were reflected in Block's June 2013 year-end evaluation, which noted concerns about Block's "breaches of professionalism," "confrontational altercations," and "belligerent" behavior toward colleagues. DE 77-1, Ex. 33, Page ID 925. As a result, Southerland decided not to renew Block's position as Chair of the Endodontics Department and stated her motivation was Block's unprofessional and confrontational behavior. Together, this evidence shows Meharry's honest belief in its non-discriminatory reason for removal of Block's chair position.

Block, however, claims that the district court ignored other evidence showing Meharry's reason was pretext. A plaintiff can demonstrate pretext by showing the employer's reason for the adverse employment action "(1) has no basis in fact, (2) was not the actual reason, or (3) is insufficient to explain the employer's action." *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 393 (6th Cir. 2008); *see also Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994), *overruled on other grounds by Geiger v. Tower Auto.*, 579 F.3d 614, 621 (6th Cir. 2009). Block does not attempt to show pretext via the first means, as he does not deny that any of the incidents cited by Meharry occurred, but he does attempt to show pretext using the two other means. Block's arguments, however, fail to create a genuine issue of material fact regarding pretext.

Block first argues that certain evidence in the record shows that his misconduct "was not the actual reason" for Meharry's removal of his chair position and was instead pretext for discrimination. *See Bhama v. Mercy Mem'l Hosp. Corp.*, 416 F. App'x 542, 551 (6th Cir. 2011) ("For a 'did not actually motivate' theory of pretext, 'the plaintiff admits the factual basis underlying the employer's proffered explanation and further admits that such conduct *could* motivate dismissal [or failure to promote].'" (alteration in original) (quoting *Manzer*, 29 F.3d at 1084)). In support, Block points to two discriminatory statements allegedly made by Meharry faculty members that created a "racially discriminatory atmosphere" and provide circumstantial evidence of discrimination against Block. CA6 R. 15, Appellant Br., at 34. First, Block claims that when Southerland first hired Block in late 2011, she was outlining her plans for the school and stated, "I've got an Indian that's head of the perio department that's no good," and later when he signed his contract, she stated she would be "getting rid of the Indian who's head of perio." DE 77-1, Block Dep., Page ID 820. Block understood these statements to refer to Singh, the then-Chair of the Periodontics department. Block also claims that in mid-2012, Meharry's Associate Vice President for Faculty Affairs & Development Patricia Matthews-Juarez warned him "to keep in mind that [he] was in an African-American institution" and suggested that he "consider leaving Meharry and returning to private practice." DE 93-1, Block Aff., Page ID 1988.

In rejecting Block's evidence of pretext, the district court noted that under Sixth Circuit precedent, "comments made by individuals who are not involved in the decision-making process regarding plaintiff's employment do not constitute direct evidence of discrimination." DE 134, Summ. J. Mem., Page ID 2416 (quoting *Carter v. Univ. of Toledo*, 349 F.3d 269, 273 (6th Cir. 2003)). Although it is true that these statements are therefore not *direct* discrimination under the

*McDonnell Douglas* framework, if the statements reflect the "existence of a discriminatory atmosphere at the defendant's workplace," they may nevertheless "serve as circumstantial evidence of individualized discrimination directed at the plaintiff." *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 356 (6th Cir. 1998); *see also Risch v. Royal Oak Police Dep't*, 581 F.3d 383, 393 (6th Cir. 2009) ("[D]iscriminatory remarks, even by a nondecisionmaker, can serve as probative evidence of pretext."). In making such an inquiry, however, "the courts must carefully evaluate factors affecting the statement's probative value, such as 'the declarant's position in the corporate hierarchy, the purpose and content of the statement, and the temporal connection between the statement and the challenged employment action . . . .'" *Ercegovich*, 154 F.3d at 357 (quoting *Ryder v. Westinghouse Elec. Corp.*, 128 F.3d 128, 133 (3d Cir. 1997), *cert. denied*, 522 U.S. 1116 (1998)). Moreover, "'isolated and ambiguous comments are too abstract, in addition to being irrelevant and prejudicial, to support a finding' of unlawful discrimination." *Parkhurst v. Am. Healthways Servs., LLC*, 700 F. App'x 445, 450 (6th Cir. 2017) (quoting *Phelps v. Yale Sec., Inc.*, 986 F.2d 1020, 1025 (6th Cir. 1993)).

Here, the circumstances surrounding each statement and their content fail to provide evidence of a discriminatory atmosphere or support Block's theory of pretext. Southerland's alleged statements were made nearly two years before Block's demotion and are too ambiguous to support a claim of discrimination. Furthermore, it is plausible, if not likely, that Southerland was referencing Singh's ethnicity simply as a means of identifying him to Block. While it is certainly not ideal to refer to an individual by his ethnicity, it does not necessarily support a finding of discrimination, particularly against Block, an individual of a different race. Additionally, Matthews-Juarez's alleged statement was made more than a year prior to Block's demotion, and Matthews-Juarez was not involved in chair-related decision-making and no longer

worked at Meharry when Block lost his position as chair. Therefore, these isolated remarks—the most recent made a year before Block's demotion—do not sufficiently undercut Meharry's claim that Block's unprofessional and confrontational behavior was the basis for his termination. *See Parkhurst*, 700 F. App'x at 450.

Block also points to the deposition of Steven Brady, Associate Dean of Business and Finance for the School of Dentistry and the School of Graduate Studies and Research, to support his claim of pretext. In his deposition, Brady said of the removal of Block's chair position that he did not "totally remember the whole scenario," but thought it was because Southerland and Block disagreed about "academic rank and also fiscal resources inside of the department." DE 77-8, Brady Dep., Page ID 1571. Even if a jury were to credit Brady's statements, all that they indicate is that a faculty member who could not remember the whole situation thought there may have been other issues involved. Brady's remarks do not suggest that it is "'more likely than not' that the employer's explanation is a pretext, or cover up" for discrimination. *Abdulnour v. Campbell Soup Supply Co., LLC*, 502 F.3d 496, 503 (6th Cir. 2007) (quoting *Manzer*, 29 F.3d at 1084)). Thus, this evidence does not show that Block's misconduct was "not the actual reason" for removal of his chair position. *See White*, 533 F.3d at 393.

Block next attempts to demonstrate pretext by showing that Meharry's reasons for his demotion were "insufficient to explain the employer's action." *Id.* To support this claim, he contends that the district court improperly rejected evidence of differing treatment between Block and Charles Williams, an African-American department chair who had once been accused of being "unprofessional" to a dental assistant, yet was not demoted from his position as chair. *See Manzer*, 29 F.3d at 1084 (noting that showing pretext under this prong "ordinarily, consists of evidence that other employees, particularly employees not in the protected class, were not

fired even though they engaged in substantially identical conduct to that which the employer contends motivated its discharge of the plaintiff"). In evaluating pretext on these grounds, the court "look[s] to the same or similar factors as when evaluating the 'similarly situated' element of the prima facie case"; however, "at the pretext stage, 'the factual inquiry [into similarity] proceeds to a new level of specificity.'" *Jackson v. VHS Detroit Receiving Hosp., Inc.*, 814 F.3d 769, 779–80 (6th Cir. 2016) (quoting *Burdine*, 450 U.S. at 255). Undertaking this "rigorous" comparison to the similarity between Block and Williams, it is clear that Williams cannot serve as a fair comparator here. *See id.* The record is replete with instances of Block's misconduct and official reprimands for unprofessional and insubordinate behavior, whereas Block is only able to point to one instance where Williams was told he was unprofessional in handling a situation. The men are not similarly situated, and the district court did not err in rejecting Block's pretext claims on these grounds.

A reasonable jury could not find that Meharry's decision to terminate Block for his unprofessional behavior is "so unreasonable as to be disbelieved," and therefore we affirm the district court. *See Sybrandt v. Home Depot, U.S.A., Inc.*, 560 F.3d 553, 561 (6th Cir. 2009).

2.

In addition to his discrimination claims, Block claims that his removal as Chair of Endodontics was unlawful retaliation for his defense of Singh, who is Indian, and Block's opposition to his own allegedly discriminatory demotion to associate professor. Block's retaliation claim fails for the same reason as his discrimination claim—Meharry had a legitimate, non-discriminatory reason for Block's demotion that he has failed to show was pretextual.

To make a *prima facie* case of retaliation, "a plaintiff must establish that: (1) he engaged in activity protected by Title VII; (2) the exercise of his civil rights was known to the defendant;

(3) thereafter, the defendant took an employment action adverse to the plaintiff; and (4) there was a causal connection between the protected activity and the adverse employment action." *Nguyen*, 229 F.3d at 563. If the plaintiff makes this showing, then "the burden of production of evidence shifts to the employer to articulate some legitimate, non-discriminatory reason for its actions." *Laster v. City of Kalamazoo*, 746 F.3d 714, 730 (6th Cir. 2014) (quoting *Dixon v. Gonzales*, 481 F.3d 324, 333 (6th Cir. 2007)). If the employer does so, then "'the burden shifts back' to Plaintiff to demonstrate that Defendants' proffered reason was not the true reason for the employment decision." *Id.* (quoting *Dixon*, 481 F.3d at 333).

Block claims that his demotion from Chair of Endodontics was in retaliation for his protected activity in complaining about discrimination against Dr. Singh and complaining about his own alleged demotion from full professor to associate professor. Even were Block able to establish the elements of a *prima facie* case of retaliation, however, his claim would fail because, as discussed above, Meharry offered a legitimate, non-discriminatory reason for removal of Block's chair position—his documented unprofessional behavior—and Block has failed to show that this reason is pretextual. *See Laster*, 746 F.3d at 730. The district court therefore did not err in granting summary judgment for Meharry on Block's claim of retaliation.

## C.

Finally, Block devotes a substantial portion of his brief to arguing that Meharry wrongfully failed to turn over certain evidence that he contends would have been helpful to his claim, specifically department chair performance evaluations for 2012 and 2013 and the minutes of a CODA meeting from April 2013. Because Block did not file a Rule 56(d) motion in opposition to summary judgment, we do not entertain this argument.

"Parties who suffer an adverse summary judgment may base their appeals on the lack of opportunity to discover evidence necessary to establish a genuine issue of material fact." *Plott v. Gen. Motors Corp., Packard Elec. Div.*, 71 F.3d 1190, 1195 (6th Cir. 1995). Here, Block "claim[s] that the district court acted prematurely by granting summary judgment before discovery was complete," i.e. before he received the minutes and the evaluations, and he has therefore appealed the summary judgment grant itself. *Id.* at 1196 (noting that when a party raises such a claim "the only adverse ruling on which the appellant can base its appeal is the summary judgment itself"). This Court has held that "in order to preserve the argument that the grant of summary judgment was too hasty and precluded necessary discovery, the appellant must have complied with the strictures of Federal Rule of Civil Procedure 56[(d)]."[4] *Id.*

Rule 56(d) allows a nonmovant to show "by affidavit or declaration that, for specific reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). Such a declaration is the proper and exclusive method for raising this discovery-related opposition to a summary judgment motion. *Johnson v. Royal Chem. Co., Ltd.*, No. 17-3234, 2017 WL 5461708, at *2 (6th Cir. Oct. 27, 2017) (holding that because the plaintiff "failed to satisfy the requirements of Rule 56(d) or otherwise move for additional discovery, the district court did not abuse its discretion by ruling on the motion for summary judgment without allowing further discovery"); *Scadden v. Werner*, 677 F. App'x 996, 1000 (6th Cir. 2017) (holding that raising discovery-related arguments in response to summary judgment motion is not sufficient and that plaintiff's "failure to comply with 56(d) is reason enough to conclude that the district court did not abuse its discretion in granting the initial summary judgment motion"). "In other words, if the appellant has not filed either a Rule 56[(d)] affidavit or a motion that gives the district court a

---

[4] This quotation, herein modified, originally refers to Rule 56(f), which in 2010 was renumbered and is now located at 56(d).

chance to rule on the need for additional discovery, this court will not normally address whether there was adequate time for discovery." *Plott*, 71 F.3d at 1196; *see also Unan v. Lyon*, 853 F.3d 279, 292 (6th Cir. 2017) ("[F]iling an affidavit that complies with Rule 56(d) is essential."). Because Block did not file a Rule 56(d) affidavit or motion, we do not address these arguments. Instead, we affirm the district court's conclusions.

IV.

For the reasons stated, we affirm the district court's grant of summary judgment for Meharry.